869 So.2d 96 (2004)
Scotty L. MAYO and Melissa Mayo
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 2003-CC-1801.
Supreme Court of Louisiana.
February 25, 2004.
Rehearing Denied April 23, 2004.
*98 Broussard, Bolton, Halcomb & Vizzier, Dorwan G. Vizzier, Alexandria, for applicant.
Stafford, Stewart & Potter, Larry A. Stewart, Andrew P. Texada, Alexandria, for respondent.
JOHNSON, Justice.
We granted this writ of certiorari to determine whether this plaintiff, who was injured while riding as a passenger in a vehicle owned by her husband as his separate property, is entitled to recover damages under an uninsured/underinsured motorist ("UM") policy issued to cover a vehicle owned by her as her separate property. For the reasons that follow, we reverse the court of appeal's decision to grant the insurer's motion for summary judgment, and we remand this matter to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
Scotty Mayo ("Scotty") and Melissa Mayo ("Melissa") were married on June 22, 1996. Prior to their marriage, Scotty purchased a 1992 Isuzu pickup truck, which was his separate property. Scotty's Isuzu pickup was insured by Allstate Insurance Company ("Allstate"), and he had rejected UM coverage. Also prior to the marriage, Melissa purchased a 1989 GEO Spectrum automobile, which was her separate property. Melissa's GEO Spectrum was insured by State Farm Mutual Automobile Insurance Company ("State Farm"), and she selected the UM insurance.
The instant case arises from an automobile accident which occurred on February 16, 1997, in which the Isuzu pickup truck, driven by Scotty and occupied by Melissa, was hit by a vehicle driven by Dianne Knapp. The vehicle that Knapp was driving was owned by Hixson Autoplex of Alexandria, Inc. ("Hixson") and was insured by Reliance Insurance Company ("Reliance"). State Farm was Knapp's automobile liability insurer. At the time of the accident, Melissa was pregnant, but she suffered a miscarriage on March 20, 1997.
*99 On February 13, 1998, the Mayos filed a personal injury and wrongful death suit against Knapp, Hixson, and State Farm as Knapp's liability insurer and as Melissa's UM insurer. Subsequently, plaintiffs filed a First Supplemental and Amended Petition, adding Reliance as a defendant. Plaintiffs settled their claims with the other defendants, including State Farm as Knapp's liability insurer.[1]
State Farm, as Melissa's UM carrier, filed a motion for summary judgment, arguing that Scotty was an insured under the terms of its policy with Melissa because the definition of "insured" included a "spouse." Therefore, State Farm contended that because Melissa was occupying a vehicle owned by an insured, her husband, she was precluded from recovering UM insurance under LSA-R.S. 22:1406(D)(1)(e).
Following a hearing, the trial court denied State Farm's motion without assigning reasons. State Farm filed an application for supervisory writs with the court of appeal. A five judge panel of the appellate court granted the writ application, and in a 3-2 decision, reversed the trial court's ruling and rendered summary judgment in favor of State Farm. Mayo v. State Farm Mutual Automobile Ins. Co., 02-0775 (La. App. 3 Cir. 5/21/03), 846 So.2d 973. Judge Cooks, joined by Judge Woodard, dissented, opining that Melissa is not barred from recovery under her own UM policy.
Scott and Melissa filed an application for certiorari in this Court. By order dated November 7, 2003, this Court granted the writ. Mayo v. State Farm Mutual Automobile Ins. Co., 03-1801 (La.11/7/03), 857 So.2d 506.

DISCUSSION
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Cadwallader v. Allstate Ins. Co., 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580; Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. See LSA-C.C. art.2045; Cadwallader, 848 So.2d at 580; Carbon, 719 So.2d at 439; Louisiana Ins., 630 So.2d at 763.
Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. See LSA-C.C. art.2047; Cadwallader, 848 So.2d at 580; Peterson v. Schimek, 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; Carbon, 719 So.2d at 440-441; Reynolds, 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion. Cadwallader, 848 So.2d at 580; Carrier v. Reliance Ins. Co., 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; Peterson, 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive *100 powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties' intent. Cadwallader, 848 So.2d at 580; Succession of Fannaly v. Lafayette Ins. Co., 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; Peterson, 729 So.2d at 1029.
Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. LSA-C.C. art. 2056; Cadwallader, 848 So.2d at 580; Carrier, 759 So.2d at 43; Louisiana Ins., 630 So.2d at 764. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. Cadwallader, 848 So.2d at 580; Carrier, 759 So.2d at 43. The strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Cadwallader, 848 So.2d at 580; Carrier, 759 So.2d at 43-44, (emphasis in original); Louisiana Ins., 630 So.2d at 770.
If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Cadwallader, 848 So.2d at 580; Fannaly, 805 So.2d at 1137; Louisiana Ins., 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. Cadwallader, 848 So.2d at 580; Peterson, 729 So.2d at 1029; Louisiana Ins., 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. Cadwallader, 848 So.2d at 580; Louisiana Ins., 630 So.2d at 764.
Uninsured motorist coverage is governed by LSA-R.S. 22:1406(D). In 1988, the Louisiana Legislature passed Act No. 203, which, inter alia, added LSA-R.S. 22:1406(D)(1)(e), which provides:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state:
* * *
(1)(e)The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
* * *
(Emphasis added).
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10.
The legislative intent of LSA-R.S. 22:1406 has been explored by the courts in various instances. In Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792 (La.App. 2 Cir.1991),[2] the Court stated:

*101 [T]he amendment to the UM statute was clearly designed to keep vehicle owners from carrying UM coverage on only one of two or more owned vehicles, thus obtaining the benefit of UM coverage regardless of which vehicle they occupied, at the cost of only one UM policy. Whereas the legislature probably intended only to preclude an insured from collecting more than the limits of the UM policy covering the vehicle in which he was riding, which in this case was equal to the coverage on the other vehicle, such is the result under the instant circumstances and pertinent statutes. (Emphasis added).
Haltom, 588 So.2d at 795. In Taylor v. Sider, 97-1841 (La.App. 4 Cir. 4/29/98), 714 So.2d 783, writ denied 98-1769 (La.10/9/98), 726 So.2d 406, the court stated:
Through this amendment [of LSA-R.S. 22:1406], the Legislature intended to preclude owners from carrying UM coverage only on selected family vehicles, while still gaining benefit of such protections regardless of which vehicle happens to be involved in an accident. Instead, in such circumstances, the lawmakers restricted UM coverage to that policy covering the occupied automobile. (Citations omitted). Thus, the owner occupying his own vehicle at the time of the accident is entitled to coverage only under the policy, if any, covering that vehicle. Further, Louisiana courts have not distinguished between the owner and other family members. (Citation omitted). Therefore, even though the vehicle involved in the accident was not owned by [the plaintiff], it was owned by her resident daughter ..., and Subsection (e) prohibits recovery under [the husband's] policy as the vehicle was not described in that policy.
Taylor, 714 So.2d at 786.
LSA-R.S. 22:1406(D)(1)(e) provides a statutory exclusion of coverage for an insured suffering bodily injury while occupying a motor vehicle owned by the insured that is not a vehicle insured under the policy. William Shelby McKenzie and H. Alston Johnson, III, LOUISIANA CIVIL LAW TREATISE VOL. 15: INSURANCE LAW AND PRACTICE, § 123 at 302 (2nd ed.1996). It is clear that, pursuant to LSA-R.S. 22:1406(D)(1)(e), UM coverage does not apply if an insured is injured while occupying a motor vehicle he or she owns if the occupied "non-owned" motor vehicle is not described in the policy under which the claim is made or if the occupied "non-owned" motor vehicle is not a newly acquired or replacement motor vehicle covered under the terms of the insured's policy.
In this case, it is undisputed that Melissa Mayo was injured while occupying a *102 vehicle not owned by her. Rather the vehicle was owned by Scotty Mayo, as his separate property. Melissa is the sole named insured on the State Farm policy at issue, which covers her separately owned vehicle. The vehicle occupied by Melissa at the time of the accident was not described in the State Farm policy. The only vehicle described in the State Farm policy is the GEO Spectrum. Moreover, the occupied vehicle was not a "newly acquired or replacement motor vehicle."
However, it is clear from the related jurisprudence that our courts have not made a distinction between vehicles owned by members of the same family. In Taylor, supra, the plaintiff was a passenger in a vehicle owned and being driven by her adult daughter when they were involved in an accident in which the other driver, who was uninsured, was at fault. The plaintiff's daughter's vehicle was insured by State Farm, and that policy had UM coverage. State Farm also insured a car owned by the plaintiff's husband, which also included UM coverage. The plaintiff was not the owner of either vehicle, and it was disputed whether she was insured under her husband's policy. At the time of the accident, the plaintiff's daughter resided with the plaintiff and her husband. State Farm tendered the limits of the UM policy covering the vehicle in which the plaintiff was a passenger. Alleging that her damages exceeded the amount tendered, the plaintiff sued State Farm for UM coverage under the policy on her husband's car. The court affirmed the trial's courts decision to grant State Farm's motion for summary judgment, finding, "[W]hile [the plaintiff] may have UM coverage available under two State Farm policies, one on [her daughter's] car and one on [her husband's] car, she may not `stack' them so as to receive UM coverage under both policies." Taylor, 714 So.2d at 785.
Similarly, in Bamburg v. State Farm Mut. Auto. Ins. Co., 26,324 (La.App. 2 Cir. 12/7/94), 647 So.2d 447, the plaintiff's minor daughter lost control of a vehicle owned by her father and struck a tree, injuring her brother. The host vehicle was insured under a policy issued by State Farm, and UM coverage had been waived on that vehicle. The plaintiff filed suit, individually and on behalf of his minor son, seeking UM protections provided in State Farm policies covering two other vehicles he owned. The court found in favor of State Farm, finding that "[I]t is well settled that a passenger may not collect under both the liability and UM provisions of the policy insuring the involved automobile, even if that contract encompasses several vehicles." Bamburg, 647 So.2d at 449. The court further concluded, "[O]ne cannot be insured with respect to liability coverage and underinsured with respect to UM coverage under the same insurance policy." Id.
This case is clearly distinguishable from Taylor and Bamburg. In Taylor, the plaintiff sought to stack UM coverage from two separate UM policies. In this case, only one UM policy is at issue: Melissa's own State Farm coverage. In Bamburg, the owner of multiple vehicles had waived UM coverage on the vehicle involved in the accident, but attempted to recover under a policy covering another vehicle he owned. In the instant case, Melissa is not the owner of the vehicle involved in the accident. She is the owner of the only vehicle covered under the State Farm policy at issue.
The majority of the court of appeal, relying on the reasoning of Brossett v. Progressive Ins. Co., 01-0986 (La.App. 3 Cir., 12/12/01), 801 So.2d 668, writ denied, 02-0130 (La.4/12/02), 813 So.2d 404, concluded that Melissa is not entitled to recover *103 under her own UM policy. In Brossett, the plaintiff was driving a 1995 Pontiac, her separate property, purchased prior to her marriage, when she was involved in an accident with another vehicle. The plaintiff's husband, a passenger in the vehicle, was killed. The plaintiff filed a lawsuit, naming, among others, State Farm as her UM provider on her vehicle. State Farm filed a motion for summary judgment, arguing that UM coverage for the plaintiff's vehicle had been rejected. Thereafter, the plaintiff filed an amended petition, contending that State Farm provided UM coverage for her husband's vehicle, which was owned by him prior to their marriage. State Farm filed a motion for summary judgment, alleging that the rejection of UM coverage on the wife's vehicle prevented recovery under the UM policy on the vehicle that was not involved in the accident, pursuant to the anti-stacking provision, LSA-R.S. 22:1406(D)(1)(e). The trial court granted the motion for summary judgment, and the court of appeal affirmed. The court found that, as a named insured under the policy for her husband's vehicle, plaintiff could not recover under the UM provisions of that policy for her own injuries. The court further concluded that the plaintiff could not recover for damages related to her husband's death. The court noted that the UM waiver containing the plaintiff's signature was dated the same day as the UM selection form signed by the plaintiff's husband. The court concluded, "To permit recovery of a resident spouse under the UM provision of one policy, but permit the other policy to be obtained at less expensive, non-UM coverage rates, would be contrary to the purpose of the anti-stacking provision."
In this case, the court of appeal stated:
Likewise, in the instant case, Melissa, a resident spouse, is not entitled to UM coverage under the State Farm policy issued on her Geo Spectrum.
Further, the State Farm policy itself provides that there is no UM coverage "FOR BODILY INJURY TO AN INSURED WHILE OCCUPYING A MOTOR VEHICLE OWNED OR LEASED BY THE INSURED IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR." The policy defines "INSURED" for purposes of UM coverage as the first person named in the declarations, i.e., Melissa, and her spouse. Additionally, the policy defines "YOUR CAR" as "the car or the vehicle described on the declarations page." The Geo Spectrum is described on declarations page. Thus, under the terms of the policy, there is no UM coverage for Melissa's bodily injury because she was occupying a vehicle owned by an "insured," i.e., her husband, and the vehicle involved in the accident was not the vehicle described on the declarations page.
Mayo, 846 So.2d at 975.
Judge Cooks, joined by Judge Woodard, dissented. The dissenters rejected the majority's reliance on Brossett, finding that case to be distinguishable from the instant case. Judge Cooks explained:
I would agree, under the holding of this court in Brossett, Mr. Mayo is precluded from recovery for his injuries under Mrs. Mayo's UM policy. He did not list his vehicle in the policy under which he is making a claim. Mrs. Mayo, on the other hand, was simply a guest passenger in a car in which she had no ownership interest. She selected UM coverage on her vehicle and paid premiums which reflected the additional coverage. Her vehicle was specifically described in her UM policy. This situation is not analogous. Mrs. Mayo is making a claim against her UM policy not her *104 husband's UM policy as was the situation in Brossett. [emphasis in original].
Mayo, 846 So.2d at 977 (Cooks, J. dissenting).
State Farm contends that, in interpreting LSA-R.S. 22:1406(D)(1)(e), Louisiana courts have not distinguished between the nominal owner of a vehicle and other family members. In support of its argument, State Farm relies on Brossett, supra.
As Judge Cooks observed, this case is distinguishable from Brossett. In Brossett, the plaintiff, who had waived UM coverage on her own vehicle, sought to recover UM benefits under her husband's policy. In this case, it was Scotty who had waived UM coverage under his Allstate policy. Thus, under Brossett, had Scotty been seeking to recover under Melissa's policy, he would be prohibited from doing so.
In Kirkland v. State Farm Mut. Auto. Ins. Co., 95-0462 (La.App. 5 Cir. 10/31/95), 663 So.2d 872, the plaintiff was a passenger in a Ford pickup truck owned and driven by her husband. The plaintiff was injured, and her husband was killed following a collision between the pickup truck and a train. The plaintiff sought to obtain benefits under the uninsured/underinsured motorist section of her own State Farm UM policy which covered her own vehicle. The plaintiff's UM policy excluded coverage for vehicles "furnished for the regular use of you, your spouse or any relative." State Farm denied coverage, and the trial court found in favor of State Farm. The plaintiff appealed, arguing that LSA-R.S. 22:1406(D)(1)(e) did not preclude her from recovery, since she was injured in an automobile which she did not own. Pursuant to a prenuptial agreement entered into by the plaintiff and her husband, the truck which was involved in the accident was her husband's separate property, and a Chrysler was the separate property of the plaintiff. Both of the vehicles were separately insured in the individual names of their respective owners, and each owner paid their own premiums.
The court of appeal reversed the trial court's ruling, stating:
Under La.C.C. art. 2341,[[3]] the separate property of a spouse is his or hers exclusively. Therefore ... [the plaintiff] can not be deemed an owner or co-owner of this vehicle.
* * *
The key issue in the present case is the status of the automobile in which the plaintiff was injuredhere, she was injured while occupying a vehicle not owned by her. The restrictions of La. R.S. 22:1406(D)(1)(e) do not operate to bar [the plaintiff] from recovery.
[The clause, "furnished for the regular use of you, your spouse or any relative,"] does not preclude recovery of UM benefits by [the plaintiff]. A vehicle "furnished *105 for ... regular use" is not, by definition, the same thing, as a vehicle "owned" by the spouse.
Kirkland, 663 So.2d at 874-75 (Emphasis in original).
In this case, while there is no evidence that Scotty and Melissa Mayo entered into a prenuptial agreement, it is unrefuted that both the Isuzu pickup truck and the GEO Spectrum were purchased prior to the marriage, and Scotty was the sole owner of the Isuzu, while Melissa solely owned the GEO. Therefore, both vehicles were "acquired by a spouse prior to the establishment of a community property regime." As such, neither spouse "owns" the vehicle owned by the other spouse. Thus, Melissa was injured while occupying a vehicle which she did not own. Moreover, both vehicles were separately insured in the names of their respective owners. Each policy had different coverages: Melissa had limits of $25,000-$50,000, with UM coverage, while Scotty had minimum legal coverage, with no UM coverage.
We conclude that the statutory mandate of LSA-R.S. 22:1406(D) does not prohibit Melissa from recovering under her own UM policy. The statute prohibits recovery if the insured, i.e., Melissa Mayo, is injured while occupying a vehicle she owns i.e., the GEO Spectrum.
State Farm argues that Melissa is precluded from recovering under the policy because she was injured while occupying a vehicle owned by her spouse, who was an "insured" under the State Farm policy. The general State Farm policy at issue defines "insured" as "the person, persons, or organization defined as insureds in the specific coverage." (Emphasis in original). The specific UM coverage provision of the policy provides as follows:
We will pay nonpunitive damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

* * *
Who is an Insured Under Coverage U

Insuredmeans the person or persons covered by uninsured motor vehicle coverage.
This is:
1. the first person named in the declarations;
2. his or her spouse;

3. their relatives; and
4. any other person while occupying:

a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car.
Such vehicle has to be used within the scope of the consent of you or your spouse; or
b. A car not owned or leased by you, your spouse or any relative, or a trailer attached to such a car. It has to be driven by the first person named in the declarations or that person's spouse and within the scope of the owner's consent.
* * *
When Coverage U Does Not Apply
THERE IS NO COVERAGE:
* * *
2. FOR BODILY INJURY TO AN INSURED WHILE OCCUPYING A MOTOR VEHICLE OWNED OR LEASED BY THE INSURED IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR.

(Emphasis in original).
We find that this clause does not operate to preclude Melissa from recovering UM *106 benefits. It is apparent that, under the clear language of the policy, Scotty is an insured "under Coverage U." However, LSA-R.S. 22:1406(D)(1)(e) provides that UM coverage is inapplicable to injuries of an insured while occupying a motor vehicle owned by the insured. The language of that provision suggests that the legislature contemplated an insured, the owner of multiple vehicles, who is injured while occupying another vehicle he or she owns. This means if Melissa had been injured while occupying another vehicle she owns, UM coverage would not apply. Those are not the facts of this case. Only two vehicles are at issue: the one owned by Melissa and the one owned by Scotty. Melissa was injured while occupying the vehicle owned by Scotty. Therefore, we must conclude that LSA-R.S. 22:1406(D)(1)(e) does not preclude Melissa from recovery UM benefits under her own State Farm policy. Accordingly, we hold that the court of appeal erred in finding that Melissa is excluded from coverage under her UM policy by this statute and by the terms of the policy itself.

CONCLUSION
For the foregoing reasons, the judgment of the court of appeal is reversed, and the judgment of the trial court denying State Farm's motion for summary judgment is reinstated. Because of our conclusions, this matter is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
VICTORY J., concurs in the result.
NOTES
[1] According to the Partial Judgment of Dismissal, Knapp remained in the suit as "a nominal defendant ... only to the extent required to satisfy the Louisiana Direct Action Statute and to allow plaintiffs to prosecute claims against [Knapp's] liability insurers other than State Farm...."
[2] In Haltom, William Haltom, accompanied by this wife and daughter ("the Haltoms"), was driving a vehicle owned by Jerry and Joyce McDonald ("the McDonalds"). Joyce McDonald and her daughter were also passengers in the vehicle. They were involved in an accident in which the other driver was solely at fault. The other driver and his insurer settled with the plaintiffs. State Farm also settled with the plaintiff as the McDonalds' UM carrier. Subsequently, the plaintiffs sought to recover under a second State Farm UM policy covering another vehicle owned by the McDonalds. The trial court concluded that the Haltoms could not recover under the second policy because they were not "insureds" under that policy because they were not named in the declarations, none of them were the spouse or relatives of the McDonalds, and they were not occupying that vehicle at the time of the accident. The court of appeal affirmed that decision, stating, "Louisiana law requires that insurance policies provide UM coverage only for persons insured under the policy." Haltom, 588 So.2d at 794 (citations omitted). The court further held that the McDonalds could not recover under the second policy, as they were not occupying the vehicle covered under that policy at the time of the accident.
[3] LSA-C.C. art. 2341 provides:

The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.