STEWART, J.
The appellant, Safeway Insurance Company of Louisiana (hereafter referred to as “Safeway”), is appealing a judgment finding that Lawrence Metz (hereafter referred to as “Metz”) had coverage at the time of his May 5, 2009, accident. For the reasons discussed below, we affirm.
FACT AND PROCEDURAL HISTORY
Safeway issued a policy of automobile liability insurance to Metz with a policy period of November 16, 2008, through May 16, 2009. This policy only listed his 2008 Chevrolet Avalanche (hereafter referred to as “Avalanche”) as an insured vehicle. Metz made an initial payment, and the balance was financed over the life of the policy. The final payment was due on April 10, 2009, in the amount of $110.82. On April 7, 2009, Metz made the final payment, and added a second vehicle, a 2008 Chevrolet Uplander (hereafter referred to as “Uplander”), to this policy. Although the April 7, 2009, payment did not include the premium for adding the Uplander, both vehicles were listed on the same policy. On April 8, 2009, Safeway sent a bill to Metz for the additional premium owed for coverage on the Uplander. Metz denies ever receiving this bill.
On April 23, 2009, Safeway issued a notice of cancellation to Metz when the additional premium was not paid. The notice of cancellation stated that the policy was being cancelled for the nonpayment of the premium, and that the policy would cease on May 3, 2009. Safeway did cancel the policy on that date.
On May 5, 2009, a two-vehicle accident occurred in Bossier City, Louisiana involving vehicles operated by Rhonda Pittman[1] (hereafter referred to as “Pittman”) and Metz. Metz was operating the Avalanche at the time of the accident.
Upon learning that his policy was can-celled, Metz paid $99.00 to reinstate coverage on the two vehicles on May 6, 2009. Later that day, he paid an additional $222.00 to renew the policy. On May 11, 2009, Metz cancelled the renewal.
Pittman subsequently filed suit for damages, in the amount of $4,175.00, against Metz in justice of the peace court on June 9, 2009. The justice of the peace rendered judgment in favor of Pittman. On June 26, 2009, Metz filed a motion for appeal in the district court and filed a third party demand against his insurer, Safeway.
On March 28, 2010, Safeway filed a motion for summary judgment, asserting that Metz’s coverage had been cancelled at the time of the accident. Metz filed an opposition to the motion for summary judgment, asserting: (1) the notice of cancellation was defective because it failed to give the requisite 10-day notice prior to the cancellation; (2) he never received the notice of *3 cancellation; and (3) the affidavit submitted by the senior underwriter for Safeway was insufficient.
The motion for summary judgment was denied, and the matter proceeded to trial. After the trial took place, the district court determined that Safeway properly can-celled the policy. However, it also determined that the cancellation only applied to the Uplander, and that the Safeway policy provided coverage to the Avalanche at the time of the accident.
Safeway now appeals.
LAW AND DISCUSSION

Motion for Summary Judgment

Safeway asserts two assignments of error in this appeal. In its first assignment, it alleges that the trial court erred in not granting its motion for summary judgment in this matter. It filed a motion for summary judgment, asserting that the policy issued to Metz was cancelled prior to the May 5, 2009, accident. Safeway asserts that the notice of cancellation was issued on April 23, 2009, and mailed to Metz’s address. This notice stated that the policy was cancelled on May 3, 2009, for nonpayment of premium. Safeway argues that the district court should have ruled that the policy was cancelled, effective May 3, 2009, at 12:01 a.m. Therefore, there was no coverage for the May 5, 2009, accident.
Addressing Metz’s opposition to its motion for summary judgment, Safeway contended that: (1) Metz incorrectly counted the 10-day notice; (2) Metz’s denial of the receipt of the notice of cancellation was not sufficient to defeat the motion for summary judgment; and (3) the affidavit from its senior underwriter established the basis for the cancellation.
On appeal of a final judgment, review may be had of the denial of a motion for summary judgment by the trial judge, which is based solely upon the resolution of a legal question, as the case here. McGill v. Owen Const. Co., Inc., 434 So.2d 520 (La.App. 2 Cir.1983). Interpretation of an | insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Guthrie v. Louisiana Medical Mut. Ins. Co. 42,974 (La.App. 2 Cir. 2/13/08), 975 So.2d 804. When determining whether a policy affords coverage for an incident, the insured bears the burden of proving the incident falls within the policy’s terms. Beck v. Burgueno, 43,557 (La.App. 2 Cir. 9/17/08), 996 So.2d 404. Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Beck, supra; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.
In this appeal of a final judgment, Safeway is assigning as error the trial court’s denial of its motion for summary judgment. We note that this unusual circumstance is permissible, since review is appropriate when the assignment is based upon the resolution of a legal question. Safeway contends that summary judgment would have been appropriate because there is no genuine issue of material fact as to whether it properly cancelled Metz’s automobile insurance policy due to nonpayment of premium pursuant to La. R.S. 22:1266(D)(1). Safeway, as the insurer and movant for summary judgment, has the burden of proving that the May 5, 2009, accident was excluded from coverage due to nonpayment of premium. La. R.S. 22:1266(D)(1) states in pertinent part:
D. (1) No notice of cancellation of a policy to which Subsection B or C of this *4 Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason shall be given.
Non-payment of premium is defined as “failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit.” La. R.S. 22:1266(A)(6).
Safeway’s 10-day notice of cancellation was mailed on April 28, 2009, with the indicated date of cancellation on May 8, 2009, at 12:01 a.m. Counting the days from April 23, 2009, to May 3, 2009, the notice does provide the requisite 10-day notice.
Rhonda Marshall, who is a senior underwriter for Safeway, confirmed that she personally reviewed its records regarding the issuance and cancellation of the policy issued to Metz. Ms. Marshall noted that the April 7, 2009, payment of $110.32 was the last installment of the policy for the Avalanche. She further agreed that the policy for the Avalanche would have been in effect from November 16, 2008 to May 16, 2009. She explained that Safeway has a “mailing register” that generates the notices of cancellation. Ms. Marshall relayed that Metz’s name and correct address were included in the mailing register during this time period, and that a notice of cancellation was mailed to him.
The trial court made the following findings regarding the notice of cancellation:
Based upon the testimony of Ms. Marshall confirming the registry of the notice, as well as, the bulk mailing certificate, I find that there was sufficient notice of cancellation sent to Mr. Metz.
We agree with this determination. Nevertheless, the trial court did not err in denying Safeway’s motion for summary judgment, since the sufficiency of the notice of cancellation is not material to the issue of whether the policy provides coverage in this case. We further discuss this issue in the following assignment of error.

Policy Coverage

In the second assignment of error, Safeway contends that the trial court legally erred when it held that its cancellation of a policy that provided coverage for two vehicles cancelled coverage only as to one vehicle, the Uplander, and that the policy continued to provide coverage for the other vehicle listed on the policy, the Avalanche, at the time of the accident.
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Mayo v. State Farm Mut. Auto. Ins. Co., 2003-1801 (La.2/25/04), 869 So.2d 96. The extent of coverage under an insurance contract is dependent on the common intent of the insured and the insurer. Succession of Fannaly v. Lafayette Ins. Co., 2001-1355 (La.1/15/02), 805 So.2d 1134. Thus, when interpreting an insurance contract, courts must attempt to discern the common intent of the insured and the insurer. See La. C.C. art. 2045; Succession of Fannaly, supra.
In ascertaining the common intent of the insured and the insurer, courts begin their analysis with a review of the words in the insurance contract. Succession of Fannaly, supra. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally *5 prevailing meaning, unless the words have acquired a technical meaning. See La. C.C. art. 2047; Mayo, supra.
An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion. Mayo, supra; Carrier v. Reliance Ins. Co., 99-2573 (La.4/11/00), 759 So.2d 37. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clarity the parties’ intent. Succession of Fannaly, supra; Mayo, supra. Ambiguous policy provisions are generally construed against the insurer in favor of coverage. If the policy wording at issue is clear and unambiguously expresses that parties’ intent, the insurance contract must be enforced as written. Courts lack authority to alter the terms of insurance contracts under the guise of contractual interpretation when the pokey’s provisions are couched in unambiguous terms. Succession of Fannaly, supra; Mayo, supra. The determination of whether a contract is clear or ambiguous is a question of law. Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577.
After reviewing these general rules of contract interpretation, we now turn to review the Safeway policy at issue.
A paragraph under the “CONDITIONS” portion of the Safeway policy, reads:
4. Two or More Automobiles — Parts I, III, and IV. When two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each, but an automobile and a trailer attached thereto shall be held to be one automobile with respect to the limits of liability under Part I of this policy, and separate automobiles under Part IV of this policy, including any deductible provisions applicable thereto.
In its oral reasons for judgment, the district court stated:
“I believe that the — the payments or premiums paid by Mr. Metz would have been applied separately to each vehicle. While it did, I do not believe there was any coverage at the time of the accident or during those dates to the Uplander, Chevrolet Uplander vehicle, this Court does find that there was coverage as pertained to the 2003 Avalanche that was involved in the vehicle or involved in the accident.”
The language in the Safeway policy states “when two or more automobiles are insured hereunder, the terms of this policy shall apply separately to each.” While interpreting Safeway’s insurance contract, jurisprudence requires that we attempt to discern the common intent of the insured and the insurer. After a careful review of the record, we find that Safeway intended for the terms of its policy to apply separately to Metz’s Avalanche and the Outlan-der. The wording in the policy clearly expresses that intent.
Further, record supports Metz’s assertion that he completed his payments for insurance coverage on the Avalanche through the remainder of the policy term. As stated in the previous assignment, Ms. Marshall testified that Metz’s April 7, 2009, payment of $110.32 completed payment for coverage for the Avalanche for the period between November 16, 2008, and May 16, 2009.
We note that the record is void of any evidence indicating that Metz’s April 7, 2009, payment of $110.32 was refunded, nor was there a pro-rata refunded for the *6 days of noninsurance. This information, coupled with the language in the policy, support our finding that Safeway’s policy issuing coverage on the Avalanche was in effect at the time of the May 5, 2009, accident. The trial court was not manifestly erroneous in finding that there was coverage on the Avalanche at the time of the May 5,2009, accident.
CONCLUSION
For the foregoing reasons, we affirm the district court’s judgment. All costs of this proceeding are assigned to Safeway Insurance Company of Louisiana.
AFFIRMED.
GASKINS, J., dissents with reasons.

. Rhonda Pittman is referred to as Rhonda "Putman” in the briefs.