STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2022 CA 0942

LAURIE B. HEBERT, INDIVIDUALLY AND KEVIN HEBERT,
INDIVIDUALLY AND ON BEHALF OF HIS MINOR SON, ROBERT
SETH HEBERT

VERSUS

LOUISIANA STATE UNIVERSITY SYSTEM BOARD OF
SUPERVISORS THROUGH LOUISIANA STATE UNIVERSITY
AND TRAVELERS INDEMNITY COMPANY OF CONNECTICUT

JUDGMENT RENDERED: _ **FEB 2 4 2023**

* * * * * * *

Appealed from the
Nineteenth Judicial District Court
Parish of East Baton Rouge • State of Louisiana
Docket Number 653161

The Honorable Kelly Balfour, Presiding Judge

* * * * * * *

| | |
|---|---|
| Kevin Louis Camel<br>Lake Charles, Louisiana | COUNSEL FOR APPELLANTS<br>PLAINTIFFS—Laurie B. Hebert,<br>Individually and Kevin Hebert,<br>Individually and on behalf of his<br>minor son, Robert Seth Hebert |
| Jeffrey Martin Landry<br>Attorney General<br>Amy Lawler Gonzales<br>Assistant Attorney General<br>Baton Rouge, Louisiana | COUNSEL FOR APPELLANT<br>DEFENDANT— Louisiana State<br>University System Board of<br>Supervisors through Louisiana State<br>University and Agricultural and<br>Mechanical College |
| Jabrina C. Edwards<br>Assistant Attorney General<br>Shreveport, Louisiana | |
| Joseph P. Guichet<br>Jay P. Farmer<br>New Orleans, Louisiana | COUNSEL FOR APPELLEE<br>DEFENDANT—Travelers Indemnity<br>Company of Connecticut |

* * * * * * *

BEFORE: WELCH, PENZATO, AND LANIER, JJ.

**WELCH, J.**

The plaintiffs, Laurie B. Hebert, individually, and Kevin Hebert, individually and on behalf of his minor son, Robert Seth Hebert, and the defendant, Louisiana State University System Board of Supervisors through Louisiana State University ("LSU"), appeal a summary judgment granted in favor of defendant, Travelers Indemnity Company of Connecticut ("Travelers"), dismissing the plaintiffs' claims against Travelers. For reasons that follow, we reverse the judgment of the trial court and remand for further proceedings.

## BACKGROUND

LSU is the owner of the LSU Hilltop Arboretum ("the Arboretum facility"), a fourteen-acre multi-educational facility located at 11855 Highland Road in Baton Rouge, Louisiana. LSU leases the Arboretum facility to Friends of Hilltop Arboretum, LLC ("Friends of Hilltop Arboretum"), a non-profit organization, in order to carry out the organization's mission to provide a natural sanctuary for students and visitors to learn about and appreciate trees and plants native to Louisiana and their place in landscape architecture. The Arboretum facility is open to the public and is also available to rent for special events, such as weddings, receptions, and parties.

On April 2, 2016, the plaintiff, Laurie Hebert, was attending a family wedding at the Arboretum facility. She went to the restroom at the facility, and while she was exiting the restroom, an alleged defective condition in the automatic door closer caused the door to suddenly close on her right hand, severing her right index finger. The plaintiffs then filed this suit seeking damages for their personal injuries, naming as defendants LSU, Friends of Hilltop Arboretum, and Travelers, and alleging that LSU and Friends of Hilltop Arboretum were liable to them based on strict liability and negligence. The plaintiffs also alleged that at the time of the accident, Travelers had in full force and effect a policy of insurance affording

2

coverage to LSU and Friends of Hilltop Arboretum for the damages claimed by the plaintiffs.

All of the plaintiffs' claims against Friends of Hilltop Arboretum were dismissed pursuant to a partial summary judgment granted in Friends of Hilltop Arboretum's favor pursuant to a judgment signed by the trial court on March 4, 2021.[1] Travelers then filed, on August 5, 2021, a motion for summary judgment seeking the dismissal of the plaintiffs' claims against it. Therein, Travelers maintained that there was no genuine issue of material fact that it did not directly insure LSU; rather, the plaintiffs contended that LSU was afforded coverage as an "additional insured" under the policy that Travelers issued to Friends of Hilltop Arboretum. Travelers contended that the terms of its policy did not afford "additional insured" coverage to LSU for the plaintiffs' claims against LSU; therefore, it was entitled to summary judgment dismissing the plaintiffs' claims against it.

After a hearing, the trial court rendered judgment granting Travelers' motion for summary judgment. On June 29, 2022, the trial court signed a judgment in favor of Travelers, granting its motion for summary judgment and dismissing, with prejudice, all of the plaintiffs' claims against Travelers, either as an insurer of Friends of Hilltop Arboretum and/or as an alleged insurer of LSU. From this judgment, both the plaintiffs and LSU have appealed.

## LAW AND DISCUSSION

### Summary Judgment

Appellate courts review the grant or denial of a motion for summary judgment *de novo* using the same criteria applied by the trial courts to determine

---

[1] The record does not reflect that this judgment was appealed. Travelers argues that the "law of the case" doctrine applies to factual findings made by the trial court when it granted Friends of Hilltop Arboretum's motion for summary judgment, such that these findings are conclusive and apply to the determination of whether its policy provides coverage to LSU. However, we find the discretionary "law of the case" doctrine does not apply in this instance. See **State ex rel. Div. of Admin, Office of Risk Management v. National Union Fire Ins. Co. of Louisiana**, 2013-0375 (La. App. 1st Cir. 1/8/14), 146 So.3d 556, 562-563.

whether summary judgment is appropriate. **Jackson v. Wise**, 2017-1062 (La. App. 1st Cir. 4/13/18), 249 So.3d 845, 850, writ denied, 2018-0785 (La. 9/21/18), 252 So.3d 914. After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); **Campbell v. Dolgencorp, LLC**, 2019-0036 (La. App. 1st Cir. 1/9/20), 294 So.3d 522, 526. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. **Bass v. Disa Global Solutions, Inc.**, 2019-1145 (La. App. 1st Cir. 6/12/20), 305 So.3d 903, 906-907, writ denied, 2020-01025 (La. 11/4/20), 303 So.3d 651.

The burden of proof on a motion for summary judgment rests with the mover. La. C.C.P. art. 966(D)(1). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense. Rather, the mover must point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

Summary judgment is appropriate for determining issues relating to insurance coverage. **Bosse v. Access Home Insurance Co.**, 2018-0482 (La. App. 1st Cir. 12/17/18), 267 So.3d 1142, 1145. Additionally, interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment. **Sanchez v. Callegan**, 99-0137 (La. App. 1st Cir. 2/18/00), 753 So.2d 403, 405. When determining whether a policy affords

4

coverage for an incident, the insured bears the burden of proving that the incident falls within the policy's terms. **Doerr v. Mobil Oil Corp.**, 2000-0947 (La. 12/19/00), 774 So.2d 119, 124, modified on other grounds on reh'g, 2000-0947 (La. 3/16/01), 782 So.2d 573. Summary judgment declaring a lack of coverage under an insurance policy may be rendered only if there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Id.*

*Insurance Policy Interpretation*

An insurance policy is a contract between the insured and the insurer and has the effect of law between the parties. **Highlands Underwriters Ins. Co. v. Foley**, 96-1018 (La. App. 1st Cir. 3/27/97), 691 So.2d 1336, 1340. Thus, an insurance policy should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. **Mayo v. State Farm Mut. Auto. Ins. Co.**, 2003-1801 (La. 2/25/04), 869 So.2d 96, 99; see also **Billiot v. Terrebonne Parish Sheriff's Office**, 98-0246 (La. App. 1st Cir. 2/19/99), 735 So.2d 17, 24, writ denied, 99-1376 (La. 7/2/99), 747 So.2d 22. The judiciary's role in interpreting insurance policies is to determine the common intent of the parties to the contract. **Mayo**, 869 So.2d at 99; see also La. C.C. art. 2045. Courts look first to the insurance policy itself in order to determine the parties' intent. See La. C.C. art. 2046; **Doerr**, 2000-0947 (La. 12/19/00), 774 So.2d 119, 124. When a contract can be construed from the four corners of the policy without extrinsic evidence, the question of contractual interpretation is answered as a matter of law. **Brown v. Drillers, Inc.**, 93-1019 (La. 1/14/94) 630 So.2d 741, 749-750.

The parties' intent, as reflected by the words of an insurance policy, determines the extent of coverage, and the intent is to be determined in accordance with the plain, ordinary, and popular sense of the language used in the policy, unless the words have acquired a technical meaning. La. C.C. art. 2047;

5

**Highlands Underwriters**, 691 So.2d at 1340. If the language in an insurance contract is clear and unambiguous, the agreement must be enforced as written, and a reasonable interpretation consistent with the obvious meaning and intent of the policy must be given. *Id.*; **Robinson v. Heard**, 2001-1697 (La. 2/26/02), 809 So.2d, 943 945. An insurance contract should not, however, be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. **Carrier v. Reliance Ins. Co.**, 99-2573 (La. 4/11/00), 759 So.2d 37, 43. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. **Succession of Fannaly v. Lafayette Ins. Co.**, 2001-1355 (La. 1/15/02), 805 So.2d 1134, 1138.

If the contract cannot be construed based on language contained therein due to an ambiguity, the court may look to extrinsic evidence to determine the parties' intent. **Doerr**, 774 So.2d at 124. At that point, determining the intent of the parties becomes, in part, a question of fact. See **Country Club of Louisiana Property Owners Association, Inc. v. Baton Rouge Water Works Company**, 2019-1373 (La. App. 1st Cir. 8/17/20), 311 So.3d 395, 399. When making the determination as to the parties' intent, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. **Doerr**, 774 So.2d at 124. Ambiguity in a policy will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered. **Fleniken v. Entergy Corp.**, 99-3023 (La. App. 1st Cir. 2/16/01), 790 So.2d 64, 69 n.4, writs denied, 2001-1269 and 2001-1295 (La. 6/15/2001), 793 So.2d 1250 and 1252. The determination of whether a contract is clear or ambiguous is a question of law. **Watts v. Aetna Cas. and Sur. Co.**, 574 So.2d 364, 369 (La. App. 1st Cir.), writ denied, 568 So.2d 1089 (La. 1990).

6

Travelers, in support of its motion for summary judgment, offered the affidavit of Kenneth Kupec, a document manager employed by Travelers, with a true and correct copy of Travelers' insurance policy issued to Friends of Hilltop Arboretum attached thereto. According to the affidavit of Mr. Kupec and its attachments, Travelers could not locate a policy issued to LSU that was in effect at any time during 2016; however, it did issue a commercial insurance policy bearing policy number 660-675X4785 to the named insured, Friends of Hilltop Arboretum, which was in effect from September 29, 2015, through September 29, 2016. The location schedule for the policy lists the address as "11855 Highland Road, Baton Rouge, LA 70810" and the occupancy is described as "Park." The general liability portion of the policy contains a declarations premium schedule, which indicates that a premium was paid for, among other things, "Gift Shops – Not-For-Profit Only" and "Parks or Playgrounds." The policy contains standard language providing for coverage for bodily injury and property damage liability. The policy expressly defines, in part, an "Insured contract" as "A contract for a lease of premises."

The policy also contains a number of endorsements. Pertinent herein are three endorsements: the "Charity First – Amendment of Coverage – Who is an Insured" endorsement ("Charity First Endorsement"); the "Xtend Endorsement"; and the "Not-For-Profit Entity Amendatory Endorsement" ("Not-for-Profit Endorsement").

The Charity First Endorsement amends the definition of "Who is an Insured" to include "Person(s) or organization(s), whether or not shown in the Schedule above, but only with respect to their liability arising out of: ... [t]he ownership, maintenance or use of that part of a premises leased to you ...."

The Xtend Endorsement contains similar language to the Charity First Endorsement, and amends "Who is an Insured" to "include as an insured any

7

person or organization (referred to below as 'additional insured') with whom you have agreed in a written contract, executed prior to loss, to name as an *additional* insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you ...."

The Not-For-Profit Endorsement expands "Who is an Insured" to include:

Any person or organization that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" that:

1 Occurs after you have signed and executed that contract or agreement; and

2 Is caused, in whole or in part, by your acts or omissions in the performance of your ongoing operations to which the written contract or agreement applies or the acts or omissions of any person or organization performing such operations on your behalf.

Travelers also offered the affidavit of Amy Hughes, an administrative assistant and the custodian of records for Friends of Hilltop Arboretum, with a true and correct copy of the "Lease Agreement for Hilltop Arboretum Building" between LSU and Friends of Hilltop Arboretum ("the Lease Agreement") attached thereto. According to the Lease Agreement, it was entered into as of March 19, 2001, and in reference to the "Hilltop Facility," *i.e.*, the Arboretum facility. The specific terms of the Lease Agreement provide, in pertinent part, as follows:

1. **Use of Hilltop Facility**

a. In consideration for the opportunities and benefits that Friends[of Hilltop Arboretum's] work at the Hilltop Facility provides to LSU, its students and faculty and for the valuable consideration set forth herein including but not limited to the donation made by Friends [of Hilltop Arboretum] to the LSU Foundation for the construction of the Hilltop Facility, LSU hereby leases to Friends [of Hilltop Arboretum] the exclusive use of the following areas to be located in the Hilltop Facility and access thereto:

i. Gift Shop
ii. Office Facility

(The Gift Shop and Office Facility are reflected and designated as such on Exhibit 1 hereto)

8

(herein "Leased Areas")

b. Furthermore, LSU hereby grants to Friends [of Hilltop Arboretum] the nonexclusive use of the remaining areas to be located in the Hilltop Facility (herein "Joint Areas") and access thereto to fulfill the mission of Friends [of Hilltop Arboretum] and to provide programs and functions which benefit LSU, subject to the terms and conditions of this Agreement. The priority for the scheduling and cooperative use of the portion of the Joint Areas shall be as follows:

First Priority:     School of Landscape and Architecture
Second Priority:   College of Design and University Generally
Third Priority:     Friends of [Hilltop] Arboretum

* * *

## 2. Rent

As rent for this lease, Friends [of Hilltop Arboretum] shall pay to LSU Ten and 0/100 Dollars ($10.00) per year payable on July 10 of each year of this Agreement.

## 3. Utilities and General Maintenance

a. LSU agrees to provide utilities, maintenance and general custodial services for Hilltop Facility, and Friends [of Hilltop Arboretum] shall reimburse LSU for that portion of the utility, maintenance and custodial expenses which are attributable to Friends [of Hilltop Arboretum's] use of the office area and the gift shop ....

* * *

## 4. Insurance and Indemnification

a. Friends [of Hilltop Arboretum] shall maintain at all times during any Agreement hereunder, insurance with Louisiana authorized insurers as follows:

* * *

ii. Comprehensive General Liability, including Personal Injury Liability [C]overage - $1,000,000.
iii. [LSU,] its officers, officials, employees, agents and volunteers are to be named as additional insureds.

* * *

## 7. Term and Termination

The initial term of this Agreement shall be twenty (20) years from the Effective Date hereof. This Agreement shall renew thereafter for six (6) additional terms of five (5) years each without any further action of the parties ....

9

The affidavit of Ms. Hughes established that she was familiar with the incident that occurred on April 2, 2016, which was the subject of this litigation, and that the restroom where this incident occurred was located in the "Joint Areas" as provided for in the Lease Agreement, not in the "Leased Areas." Ms. Hughes further stated that Friends of Hilltop Arboretum was not responsible for the inspection, maintenance, or repair of the gift shop, the office, or the Joint Areas, and that prior to the incident, she was not aware of any complaints concerning the restroom door, including whether the door closed too hard or too fast.

Travelers also relied on the deposition testimony of Peggy Coates, who is employed by LSU as the director of the Arboretum facility. Ms. Coates' testimony confirmed that the restroom where the incident occurred was located in the area in which Friends of Hilltop Arboretum had non-exclusive use. Ms. Coates also confirmed that LSU handled all of the routine maintenance at the Arboretum facility, and that prior to the incident at issue, she was not aware of any problems with the door to the women's restroom closing too hard or too fast.

Lastly, Travelers relied on the deposition testimony of Robert Howard Benton, Jr., the associate director of facility maintenance for LSU. Mr. Benton testified that the area over which he was in charge included the Arboretum facility. Mr. Benton explained that LSU did not have a schedule for checking the door closers at the Arboretum facility and that LSU only made adjustments to doors on its properties either in response to a request for an adjustment or a report that a door was not closing properly. Mr. Benton testified that Friends of Hilltop Arboretum had no general maintenance responsibilities at the Arboretum facility, nor was it responsible for the maintenance of the restroom door at issue in this suit.

Based on this evidence, Travelers argues that under the terms of the Lease Agreement, Friends of Hilltop Arboretum only leased the gift shop and the office; it did not lease the "Joint Areas," which is where the restroom door involved in

Mrs. Hebert's accident was located. Thus, Travelers contends that the restroom was not located in "that part of the premises leased to" Friends of Hilltop Arboretum, and as such, LSU is not covered as an additional insured under either the Charity First Endorsement or the Xtend Endorsement. Travelers also contends that since Friends of Hilltop Arboretum was dismissed and the evidence establishes that it was not obligated under the Lease Agreement to inspect, maintain, or repair the restroom door, LSU is not covered as an additional insured under the Not-For-Profit Endorsement, because Mrs. Hebert's injuries were not "caused in whole or in part by [Friends of Hilltop Arboretum's] acts or omissions in the performance of [its] ongoing operations."

In opposition to the motion for summary judgment, LSU[2] relied on the deposition testimony of Ms. Hughes and Ms. Coates, as well as an affidavit by Ms. Coates. According to the deposition of Ms. Hughes, under the Lease Agreement, Friends of Hilltop Arboretum is entitled to use the entire fourteen-acre Arboretum facility. She explained that the Arboretum facility is open to the public and that it can also be rented out. Ms. Coates testified that, although LSU owns the Arboretum facility, Friends of Hilltop Arboretum operates it and collects money by renting out the Arboretum facility for events, such as the wedding attended by Mrs. Hebert. The evidence further shows that when Friends of Hilltop Arboretum rented out the Arboretum facility for events, the office space and the gift shop were not included; instead, Friends of Hilltop Arboretum only rented out the "Joint Areas" or the areas in which it has non-exclusive use under the Lease Agreement. Ms. Hughes explained that LSU is not required by the Lease Agreement to approve any rentals of the "Joint Areas" for special events; instead, Friends of Hilltop Arboretum provides its rental paperwork to interested parties, enters into the rental agreements with those interested parties, and Friends of Hilltop Arboretum

---

[2] The record before us does not contain the opposition to the motion for summary judgment that was filed by the plaintiffs in response to Travelers' August 5, 2021 motion for summary judgment.

11

provides workers for the events. Ms. Hughes also explained that LSU does not receive any funds from the special events. Ms. Coates stated that the Lease Agreement required Friends of Hilltop Arboretum to name LSU as an insured under Friends of Hilltop Arboretum's liability policy of insurance.

Ms. Hughes also explained that the time of the wedding and accident in this case, the Arboretum facility was not open to the public, but it was in the control of Friends of Hilltop Arboretum, that contract part-time workers of Friends of Hilltop Arboretum were present at the wedding and were there to "unlock doors, [to] turn on lights," to help with the thermostat, to "make sure everything [was] left as it was found," and to help lock up at the end of the event.

Based on our *de novo* review of the documents offered in support of and in opposition to Travelers' motion for summary judgment, we find, based on the undisputed material facts, that the Travelers' policy with Friends of Hilltop Arboretum may reasonably be interpreted to provide additional insured coverage to LSU for the plaintiffs' claims. Therefore, summary judgment was not appropriate as a matter of law. There is no dispute that LSU owns the Arboretum facility and that it entered into a Lease Agreement with Friends of Hilltop Arboretum. A lease is defined in La. C.C. art. 2668 as "a synallagmatic[3] contract by which one party, the lessor, binds himself to give the other party, the lessee, the *use and enjoyment of a thing* for a term in exchange for a rent that the lessee binds himself to pay." The Lease Agreement, which was effective as of March 19, 2001, was for the use of the entire Arboretum facility by Friends of Hilltop Arboretum for an initial term of twenty years (and thereafter for six additional terms of five years) and the rent to be paid by Friends of Hilltop Arboretum was the sum of $10.00 per year. The specific provisions of the Lease Agreement provided Friends of Hilltop Arboretum with the exclusive use of the gift shop and office facility, which were subsequently

---

[3] See La. C.C. art. 1908 (providing that "[a] contract is bilateral, or synallagmatic, when the parties obligate themselves reciprocally, so that the obligation of each party is correlative to the obligation of the other").

referred to therein as the "Leased Areas," and the non-exclusive use of the remaining areas, which were subsequently referred to as the "Joint Areas." The Lease Agreement also required LSU to maintain the Arboretum facility and Friends of Hilltop Arboretum to maintain liability insurance, with LSU named as an additional insured.

It is also undisputed that the restroom door involved in the accident that caused the plaintiffs' injuries was located in the area of the Arboretum facility that Friends of Hilltop Arboretum had non-exclusive use of, *i.e.*, the "Joint Areas." Friends of Hilltop Arboretum is the named insured on the Travelers' policy, and the Travelers' policy identifies the insured premises as 11855 Highland Road, which is the location of the Arboretum facility; the policy also describes the area covered by the policy as "Park."

Pursuant to the Charity First Endorsement, an insured also includes a person or organization with respect to their liability arising out of ownership, maintenance or use of "that part of a premises leased to you." Likewise, the Xtend Endorsement provides that an additional insured also includes a person or organization with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, with respect to their liability arising out of ownership, maintenance or use of "that part of any premises leased to you." The words in those phrases must be interpreted in accordance with its generally prevailing meaning. See La. C.C. art. 2047.

Applying the generally prevailing meaning of the term "lease," as set forth in La. C.C. art. 2668 (a contract for the *use* of a thing for a term in exchange for a rent) and the specific terms of the Lease Agreement, the phrase "that part of [a/any] premises leased to you" must be interpreted to include all areas of the Arboretum facility—both the area which Friends of Hilltop Arboretum had exclusive use of (the area referenced as "Leased Areas" in the Lease Agreement)

13

and the area which it had non-exclusive use of (the area referenced as "Joint Areas" in the Lease Agreement).

Thus, because LSU undisputedly owns and maintains the Arboretum facility, LSU leases to Friends of Hilltop Arboretum all areas of the Arboretum facility, and the plaintiffs' claims arise out of LSU's liability for the ownership, maintenance, and use of the Arboretum facility, the Charity First Endorsement may be reasonably interpreted to provide coverage to LSU, as an additional insured, for the plaintiffs' claims. For this same reason, the Xtend Endorsement may be reasonably interpreted to provide coverage to LSU as an additional insured for the plaintiffs' claims—the Lease Agreement between LSU and Friends of Hilltop Arboretum is a written contract that was executed prior to the accident that caused the plaintiffs' injuries, required Friends of Hilltop Arboretum to name LSU as an additional insured, and the plaintiffs' claims arise out of LSU's liability for the ownership, maintenance, or use of the Arboretum facility. Lastly, the Not-For-Profit Endorsement may also be reasonably interpreted to include LSU as an additional insured, as the Lease Agreement, which was executed prior to the accident that caused the plaintiffs' injuries, required Friends of Hilltop Arboretum to include LSU as a named insured and the plaintiffs' injuries arise out of the acts of Friends of Hilltop Arboretum in the performance of its ongoing operations at the Arboretum facility, *i.e.*, renting out the Arboretum facility for special events, such as the wedding event at issue herein.

Despite LSU's ownership of and responsibility for maintaining the Arboretum facility, and the specific provisions of the Lease Agreement discussed herein, Travelers argues that LSU is not covered as an insured for the plaintiffs' claims under the Charity First Endorsement or the Xtend Endorsement because the restroom door involved in the accident was not in "that part of the premises leased" to Friends of Hilltop Arboretum. In doing so, Travelers suggests that only the areas which Friends of Hilltop Arboretum had exclusive use of, and which were

14

referred to in the Lease Agreement as "Leased Areas," were part of the "premises leased" by Friends of Hilltop Arboretum. However, this interpretation of the policy is simply not reasonable and would require us to ignore the generally prevailing meaning of the term "lease," *i.e.*, a contract for the "use" of a thing for a term in exchange for rent, and the provisions of the Lease Agreement giving Friends of Hilltop Arboretum non-exclusive "use" of the remaining or "Joint Areas" of the Arboretum facility. Travelers' suggested interpretation of the policy would also require us to interpret the phrase "that part of [a/any] premises leased" to Friends of Hilltop Arboretum to mean that part of the premises leased *exclusively* to Friends of Hilltop Arboretum; however, such interpretation would require us to read language into the policy that is not there. Lastly, it would also require us to ignore what Travelers described as the leased premises (11855 Highland Road) and the area covered ("Park") in the policy. Limiting coverage to only the areas that Friends of Hilltop Arboretum had exclusive use of (the gift shop and office) would lead to the absurd conclusion of restricting coverage to considerably less areas than what was reasonably contemplated by the parties based on the clear language of the policy.

Therefore, because the language of Travelers' policy is clear and unambiguous, the policy must be enforced as written. Since the policy may be reasonably interpreted to provide coverage to LSU for the plaintiffs' claims, summary judgment determining a lack of coverage for LSU under the Travelers' policy was inappropriate. Accordingly, the trial court's judgment granting Travelers' motion for summary judgment and dismissing, with prejudice, all of the plaintiffs' claims against Travelers is hereby reversed.

## CONCLUSION

For all of the above and foregoing reasons, the June 29, 2022 judgment of the trial court, granting summary judgment in favor of Travelers Indemnity Company of Connecticut and dismissing the claims of the plaintiffs, Laurie B.

15

Hebert, individually, and Kevin Hebert, individually and on behalf of his minor son, Robert Seth Hebert, is reversed and this matter is remanded for further proceedings.

All costs of this appeal are assessed to Travelers Indemnity Company of Connecticut.

**REVERSED AND REMANDED.**