CARAWAY, J.
hln this .uninsured/underinsured motorist (“UM”) dispute, the plaintiff claims that as an insured under the policy, her emotional, distress and mental anguish caused by her mother’s death entitled her to UM benefits. The mother’s ■ death resulted from a vehicle accident in Texas caused by an- uninsured/underinsured driver. The decedent was not' an insured under the defendant’s policy, nor was the vehicle in which she was riding an insured vehicle under the policy. The trial court granted summary judgment in favor of defendant, dismissing plaintiff’s claims. From our review of the language of the UM policy, we affirm.
Facts and Procedural Background ''
On August 1, 2013, Helen Stopak (“Sto-pak”) was killed in a single-vehicle accident that occurred in Texas while riding as a guest passenger in an automobile owned and operated by her daughter, Tana Roy (“Roy”). Subsequently, Roy’s automobile liability insurer, Safeco Insurance Company, paid its policy limits of $80,000 to Lori Marshall (“Marshall”), the daughter of Stopak, and her sisters. Thereafter, Marshall sought UM benefits provided by her husband’s insurance with Louisiana Farm Bureau Casualty Insurance Company (“Farm Bureau”). ; Marshall claimed that since the car in which her mother was riding was underinsured, she was entitled to UM benefits as án insured under the Farm Bureau policy for her mother’s *216 wrongful death. The Farm Bureau policy provided for UM benefits in the amount of $50,000/$100,000 per insured claim, which is the same as the liability benefits under the policy.
li>On July IS, 2014, Marshall filed this suit against Farm Bureau seeking damages, penalties, and attorney fees after Farm Bureau denied her request; Farm Bureau filed a motion for summary judgment seeking dismissal of Marshall’s claim. Farm Bureau argued that Lafleur v. Fidelity & Casualty Co. of New York, 385 So.2d 1241 (La.App. 3d Cir.1980), provides that Marshall is not entitled to UM benefits -because her mother was not insured under its policy. The trial court granted Farm Bureau’s summary judgment dismissing Marshall’s demands with prejudice. From this summary judgment, .Marshall appeals.

Discussion

Interpretation of an insurance contract is usually a legal question that can be properly resolved in the framework of a motion for summary judgment. Broadmoor Anderson v. National Union Fire Ins. Co. of La., 40,096 (La.App.2d Cir.9/28/05), 912 So.2d 400, 403-404, writ denied, 05-2462 (La.3/24/06), 925 So.2d 1239. An appellate court reviews a trial court’s granting of summary judgment de novo. Volentine v. Raeford Farms of La., L.L.C., 48,219 (La.App.2d Cir.7/24/13), 121 So.3d 742, writ denied, 13-2493 (La.1/17/14), 130 So.3d 948.
 An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Green ex rel. Peterson v. Johnson, 14-0292- (La.10/15/14), 149 So.3d 766, 770, citing Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La.5/22/07), 956 So.2d 583, 589-90. The responsibility of the judiciary in interpreting insurance contracts is to determine the parties [¡jcommon intent; this analysis is begun by reviewing the words of the insurance contract. Green, supra at 771. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; Bonin v. Westport Ins. Corp., 05-0886 (La.5/17/06), 930 So.2d 906. When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation- may be made in search of the parties’- intent, and courts must enforce the contract as written. La. C.C. art. 2046; Green, supra.' The determination of whether a contract is clear or ambiguous is a question of law. Green, supra. Any doubt or ambiguity in an insurance policy must be construed in favor' of the insured and against the insurer, and when the ambiguity' relates to an exclusionary clause, the law requires that the contract be interpreted liberally in favor of coverage. Oxner v. Montgomery, 34,727 (La.App.2d Cir.8/1/01), 794 So.2d 86, 90, writ denied, 01-2489 (La.12/7/01), 803 So.2d 36.
In Louisiana, UM coverage is provided by statute and embodies a strong public policy. La. R.S. 22:1295 (hereinafter the “ÜM 'Statute”); Bernard v. Ellis, 11-2377 (La.7/2/12), 111 So.3d 995. The statutes providing for UM, coverage in the absence of . a valid rejection or selection of lower limits must be liberally construed, while the statutory exceptions to UM coverage must be strictly construed. Gray v. American Nat. Property & Cas. Co., 07-1670 (La.2/26/08), 977 So.2d 839, 845. Any exclusion from coverage must be clear- and unmistakable. Id. The-burden.is-on the insurer to prove any insured named in the-policy rejected in writing the coverage Lequal to bodily injury coverage or selected lower limits. Id., UM coverage is deter *217 mined by contractual provisions and- by applicable statutes. Green, supra.
Under the UM Statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected. Green, supra. If a person qualifies as a liability insured under a policy of insurance, that person is entitled to the statutory guarantee provided for in the UM Statute. Green, supra, citing Filipski v. Imperial Fire & Cas. Ins. Co., 09-1013 (La.12/1/09), 25 So.3d 742; Cadwallader v. Allstate Ins. Co., 02-1637 (La.6/27/03), 848 So.2d 577.
When the existence of UM coverage under a policy of automobile insurancé is at issue, we must engage in a two-step analysis: (1) the automobile insurance* policy is first examined to determine whether UM coverage is contractually provided under the express provisions of the policy; (2) if no UM coverage is found under the policy provisions, then the UM Statute is applied .to determine whether statutory coverage is mandated; Green, supra at 774, citing Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, Filipski, supra; Succession of Fannaly v. Lafayette Ins. Co., 01-1355 (La.1/15/02), 805 So.2d 1134; Cadwallader, supra.
We find that the record and the parties’ arguments do not address the legal basis for plaintiffs right to receive damages under Texas law for the wrongful death of her mother. In this summary judgment setting, with Farm Bureau asserting that plaintiff is not entitled to UM coverage under the | ¿insuring agreement of its policy, the plaintiff did not oppose the motion by demonstrating that she is “legally entitled” to recover damages for wrongful death against the underinsuréd Texas driver. Nevertheless, we will assume that plaintiffs claim is a valid claim under Texas wrongful death law.
There are four provisions of the Farm Bureau policy that must be considered for this ’UM claim. The first is the undisputed recognition that Marshall is an “insured” under the policy as she is a resident of the named insured’s (her husband’s) household.
Next, in the general definitional section of the policy, the, term “bodily injury” is addressed. Significantly, the actual meaning of the phrase “bodily injury” is not defined in any detailed manner. The policy merely elaborates upon its common meaning to specify what it additionally entails, as follows:
“bodily injury” includes sickness, disease or death at any time resulting therefrom.
In this case, the factual focus of the accident event pertains to the “death” of Stopak “resulting [from]” her “bodily injury.” Therefore, as expected, the use of “bodily injury” and the subject of “death” are addressed in the second policy provision, the Insuring Agreement, obligating Farm Bureau for UM coverage, as follows:
To pay all sums, except punitive and/or exemplary damages, which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured •or underinsured automobile because of bodily injury, sickness, or disease, including death resulting therefrom, hereinafter called “bodily injury,” sustained by the insured, and arising out of the ownership, maintenance or use of such uninsured automobile.
| (Although neither party has discussed in brief the UM Statute, key portions of the Farm Bureau Insuring.Agreement, are direct quotes from our statutorily mandated UM coverage. The mandated statutory *218 coverage, unless rejected, is “for the protection of persons insured ... who are legally entitled to recover nonpunitive damages from ... operators of uninsured or underinsured motor vehicles because of bodily injury ... including death resulting therefrom.” La. R.S. 22:1295.
The final relevant provision of the policy defines the “insured” in terms of three categories of persons who may receive UM benefits, as follows:
(a) the named insured and any relative while a resident of the named insured’s household;
(b) any other person while occupying an insured automobile; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above.
In considering and interpreting all of these policy provisions, we find that the policy’s reference to “death” must be the base inquiry in this wrongful death benefit claim. As used twice in these provisions, and as an identifying measure of the damages caused by the uninsured motorist, the policy addresses only “death resulting [from]” a “bodily injury” to the decedent. The question posed is: what kind of damages miist the uninsured motorist have caused by her negligence to trigger the Farm Bureau UM benefit? Under the wording of the Insuring Agreement, the answer is “damages” that the motorist caused “because of bodily injury ... including death resulting therefrom ... sustained by the insured.”
|7The key phrase, twice used in these policy provisions, is “sustained by the insured.” This phrase as used in the Insuring Agreement further requires that the death-related damages resulting from the bodily injury of the decedent also be-an injury and death “sustained by the insured.” We do not find that this important phrase stands alone and modifies by itself the word “damages” in the Insuring Agreement as argued by plaintiff. The clear import of the language in its context is that the bodily injury causing death to a decedent must be a bodily injury and death sustained by an insured. From such death would flow a UM benefit for the insured decedent for her pain and suffering before death (or survival action benefit) and, separately, to her wrongful death beneficiaries.
The two categories of the death-related damages and corresponding UM benefits are addressed in the definition of “insured” under the UM coverage. Most specifically, with regard to wrongful .death claimants, the “insured” identified under part (c), quoted above, need not be a named insured, resident of the named insured’s household, or guest passenger. The language provides for “any person” to receive a UM benefit. Therefore, the part (c) definition is broad enough for any person, such as a wrongful death beneficiary, to receive the UM benefits “because of bodily injury ... sustained by an insured.”
In summary, from our review of the UM provisions of the Farm Bureau policy, damages resulting from wrongful death are covered only when they arise from the bodily injury that caused the death of an insured |sunder the policy. Since Stopak was not an insured under the policy, UM benefits are not owed.
Finally, our conclusion regarding the policy language is the same as the ruling in Lafleur, supra. The court of appeal in Lafleur interpreted virtually the same policy language for UM coverage in that case. Noting the critical phrase “sustained by the insured,” the court ruled that such policy language excludes UM benefits in *219 the situation where the decedent was not an insured under the policy;[1]
We also reject Marshall’s argument that the Louisiana Supreme Court ruling in Crabtree v. State Farm Ins. Co., 93-0509 (La.2/28/94), 632 So.2d 736, somehow broadened the meaning of the term “bodily injury” for purposes of UM disputes so that Lafleur’s rationale should now be rejected. Crabtree was not a UM case and examined a different policy definition for “bodily injury” in an automobile liability policy. The meaning of bodily injury in both the Farm Bureau policy and the UM Statute requires a common understanding of the term and would include, generally, mental anguish resulting from another person’s death. Nevertheless, the “bodily injury” coverage which the Farm Bureau policy addresses is the death-causing bodily injury sustained by an insured under the policy. That accident did not occur in this case.

19Conclusion

For the foregoing reasons, we affirm the trial court’s judgment. Costs of this appeal are assessed to! appellant.
AFFIRMED.

. The Lafleur court also addressed the argument that the mandated UM coverage of the UM Statute was broader than the State Farm policy’s UM coverage. The court held that the UM Statute does not mandate UM benefits for wrongful death damáges resulting from the death of a third party, not otherwise insured for liability under the automobile policy. Marshall does not make any argument to this court concerning the scope of the mandated UM coverage, nor does she áddress the language of the UM Statute. Nevertheless, we agree with Lafleür’s measure of the legislative intent for coverage under the UM Statute which does not extend to the death of the uninsured third-party in this case. •