MOORE, J.
| ¶ Shirley Ann Marzell and her two daughters, Jacqueline and Monique, appeal a summary judgment that dismissed their claims against American Safety & Indemnity Company (“ASIC”), a long-term care facilities and general liability insurer, based on the automobile exclusion in ASIC’s policy covering Charlyn Enterprises LLC, d/b/a Charlyn Rehabilitation and Nursing Center, in Tallulah. We affirm.

Factual and Procedural Background

Ms. Marzell was a resident of Charlyn. According to the pleadings, she required a lot of attention, as she was obese, diabetic, on dialysis and confined to a wheelchair. On July 19, 2010, Charlyn personnel intended to drive her to the dialysis center. They rolled her wheelchair out to a lift van, placed the wheelchair on the lift platform and started to raise her into the van. However, something went wrong, and the wheelchair rolled off the lift platform, dropping Ms. Marzell to the ground. The back of her head struck the pavement, causing serious injuries.
Ms. Marzell and her daughters filed this suit against Charlyn and its auto liability carrier, Hanover, in June 2011. They alleged that Charlyn’s employees failed to properly maintain and secure the van lift and the wheelchair; the daughters alleged loss of consortium. They also alleged that they were concurrently filing a request for a medical review panel (“MRP”) against Charlyn.
Charlyn urged an exception of prematurity, as it was a qualified healthcare professional and entitled to the process of the MRP; nevertheless, discovery continued.
| Jn August 2013, the Marzells amended their petition to add ASIC, Charlyn’s long-term care facilities and general liability carrier.
Shortly after this, the Marzells settled with Hanover, the auto liability carrier. According to ASIC, Hanover paid a settlement of $750,000, of which the plaintiffs placed $365,000 in a special needs trust for Ms, Marzell. The Marzells then dismissed Hanover, specifically reserving their rights against Charlyn and ASIC.
The MRP rendered its opinion in July 2014, finding that Charlyn did not deviate from the standard of care in its handling of Ms. Marzell. The Marzells amended their petition again, this time to dispute the MRP decision and reiterate that Charlyn *407 employees failed to use an appropriate wheelchair to load her into the van.

Motion for Summary Judgment

ASIC raised two defenses: the plaintiffs failed to notify them of the claim during the “claims made” period, and the automobile exclusion applied to the claim. In February 2016, it filed the instant motion for summary judgment, urging only the automobile exclusion, which provided:
SECTION IV. EXCLUSIONS
G. * * * This insurance does not apply to any “claim” or “suit” arising out of or related to:
⅜ ‡ ‡
(bb) Aircraft. Automobile, or Watercraft
“bodily injury” or “property damage” arising out of the ownership, maintenance, use or entrustment to others of any aircraft, “automobile” or watercraft owned or operated by or rented or loaned to'any “Insured”. Use includes operation and “loading or unloading”.
Elsewhere, “loading or unloading” is defined as “the handling of property: * * * while it is. being moved from an ‘automobile’ to the place where it is finally delivered, but ‘loading or unloading’ does not include the [^movement of property by means .of a mechanical device * * * that is not attached to the * * * ‘automobile.’”
ASIC showed that in their supplemental and amending petition, the Marzells alleged the “placement of the wheelchair in the van was not an unexpected or unnatural use of the vehicle” and thus essentially conceded “the use of the van was a critical component of the incident giving rise to” Ms. Marzell’s injuries.[1] In support, ASIC attached copies of the original and amending petitions, a copy of its “Long Term Care Facilities Liability (Claims Made and Reported) Policy” and of Hanover’s “Business Auto” policy.
The Marzells opposed the motion, offering no summary judgment evidence to refine or amplify the allegations of their petition. Instead, they argued that the accident occurred because of many acts of negligence (failure to comply with policy and procedure in moving a patient in a wheelchair outside the facility,' failure to have two employees assist in loading Ms. Marzell into the van, leaving her unattended, using an improper wheelchair for a patient her size, etc.), in addition to the use of the automobile. They contended that even though use of the van was excluded from coverage, these other acts of negligence or malpractice were covered, making summary judgment improper.
The court heard arguments in March 2016 and rendered a 20-page written opinion granting ASIC’s motion for summary judgment. After setting out the facts of the accident, procedural history, policy provisions and plaintiffs’ allegations, the court applied the “substantial factor” and “flow from the use” test laid out in Carter v. City Parish Gov’t of E. Baton Rouge, 423 So.2d 1080 (La. 1982), and Edwards v. Horstman, 96-1403 (La. 2/26/97), 687 So.2d 1007. The court noted Second Circuit cases that applied Carter and Ediuards to claims of negligent supervision or entrustment to absolve a homeowners’ or GCL carrier, Otwell v. State Farm, 40,142 (La. App. 2 Cir. 10/26/05), 914 So.2d 100; Oaks v. Dupuy, 26,729 (La.App. 2 Cir. 4/5/95), 653 So.2d 165, writ denied, 95-1145 (La. 6/16/95), 655 So.2d 335. The court concluded that loading or unloading a patient into the van was a “common and essential element in each theory of liability” and thus constituted “use” of the automobile. Find *408 ing the exclusion applied, the court rendered judgment dismissing ASIC.

Legal Principles

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 2010-0343 (La. 1/19/11), 57 So.3d 1002; Samaha v. Rau, 2007-1726 (La. 2/26/08), 977 So.2d 880. A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C. C. P. Art. 966 B(2). Appellate courts review motions for summary judgment de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Peironnet v. Matador Res. Co., 2012-2292 (La. 6/28/13), 144 So.3d 791; Schroeder v. Board of Sup’rs of La. State Univ., 591 So.2d 342 (La. 1991).
|fiThe interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on motion for summary judgment. Bernard v. Ellis, 2011-2377 (La. 7/2/12), 111 So.3d 995; Cutsinger v. Redfern, 2008-2607 (La. 5/22/09), 12 So.3d 945. Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and enforce reasonable conditions on the policy obligations they contractually assume. Id. A court should grant the motion for summary judgment only when the facts are taken into account and it is clear that the provisions of the insurance policy do not afford coverage. Id.; Reynolds v. Select Props. Ltd., 93-1480 (La. 4/11/94), 634 So.2d 1180. The applicability of a policy exclusion may be resolved by summary judgment. Bonin v. Westport Ins. Corp., 2005-0886 (La. 5/17/06), 930 So.2d 906; Jones v. Estate of Santiago, 2003-1424 (La. 4/14/04), 870 So.2d 1002; Pritchard v. Shelter Ins. Co., 42,832 (La.App. 2 Cir. 2/27/08), 978 So.2d 502, unit, denied, 2008-0694 (La. 6/6/08), 983 So.2d 917.
In order for conduct to constitute “use” of an automobile, that conduct must be essential to the defendant’s liability and the specific duty breached by the insured must flow from use of the automobile. Edwards v. Horstman, supra; Otwell v. State Farm, supra; Mahlum v. Baker, 25,876 (La. App. 2 Cir. 6/24/94), 639 So.2d 820.

Discussion

By them sole assignment of error, the Marzells urge the district court erred in finding the automobile use exclusion of ASIC’s policy applicable to exclude coverage for Ms. Marzell’s injury. They contend the injury resulted from two separate and unrelated acts of negligence: selecting an improper | ¿wheelchair for a patient of Ms. Marzell’s weight, and operating the lift without a second employee present to secure the wheelchair. The first act, they submit, had absolutely nothing to do with the use of an automobile: “If the lift van had been a mile away and Ms. Marzell had been sitting on the sidewalk when she turned to wave, the wheelchair still would have tipped over backwards.”
They do not contend that the policy is ambiguous. Instead, they urge a strict reading of the exclusion (“Use includes operation and ‘loading or unloading’.”) and the definition of “loading or unloading” (“means the handling of property”). They argue that by negative implication, “use of an automobile” does not include loading and unloading persons, so loading Ms. Marzell into the van could not be the kind *409 of “loading or unloading” contemplated by the exclusion.
While they concede the formulation of Edwards v. Horstman, supra, they argue that if liability arises from two sources, “a non-auto related incident as well as an auto related occurrence,” then the mere fact that one source is excluded under a policy does not render the coverage ineffective if the other source of liability is included, citing Johns v. State Farm, 349 So.2d 481 (La. App. 3 Cir. 1977). They contend that selecting the wrong kind of wheelchair was the true source of the accident and unrelated to the use of the van, like selecting the wrong kind of strap to tie down lumber that fell out of a truck and was not excluded from a CGL policy in Young v. E & L Lumber Co., 392 So.2d 136 (La. App. 1 Cir. 1980), or selecting a fragile rope to pull down a tree was not excluded from an auto policy in Vogt v. Hotard, 144 So.2d 714 (La. App. 4 Cir. 1962). The exclusion cannot apply when use of the vehicle “was only incidental to the theory of liability alleged by the plaintiff,” Fleniken v. Entergy Corp., 1999-3023 (La.App. 1 Cir. 2/16/01), 790 So.2d 64, units denied, 2001-1269, -1295 (La. 6/15/01), 793 So.2d 1250, 1252.
Finally, they contend insurance policies should be read to extend coverage rather than deny it. The ASIC policy, they argue, is clearly intended to cover medical malpractice, and Louisiana’s Medical Malpractice Act specifically includes “loading and unloading a patient,” La. R.S. 40:1229 A(3). They feel that to apply the automobile exclusion in this case would negate the malpractice coverage.
In ruling on the motion for summary judgment, the court must take into account the facts as they apply to the policy exclusion. The Marzells’ original petition (against Charlyn and its auto liability carrier) alleged liability for “failing to properly maintain and secure the van lift and wheelchair.” The amended petition, which added ASIC as a defendant, alleged that the Charlyn employee left her on the elevated lift, walked to the side of the van, opened the sliding door, got in, and went to the rear of the van to pull the wheelchair in; at this point, Ms. Marzell turned to wave to someone, but her weight shifted causing her to fall backwards off the lift. On these facts, the only possible conclusion is that the accident flowed from getting Ms. Marzell into the lift van, a normal use of the automobile. While the Marzells have theorized that the accident could have happened a mile away from the van, they introduced no summary judgment evidence to show that the wheelchair was defective or inappropriate for Ms. Marzell, or that anything other than the use of the lift van caused this fall.[2] This record | ^supports the conclusion that the accident arose out of the use of the automobile.
The policy defines “use,” in part, as “loading or unloading,” and defines “loading or unloading” as the “handling of property,” which might suggest that getting a person into an automobile would not be “loading or unloading.” However, the full definition of “use” is “operation and ‘loading or unloading,’ ” and getting in and out of a car is an inevitable and integral part of operating it. Moreover, “use” is a broad, catchall term designed to include “all uses of the vehicle not falling within the terms ‘ownership’ or ‘maintenance,’ and involves simply employment for the purposes of the user.” Bernard v. Ellis, supra. We do not adopt the Marzells’ creative, yet strained, reading of the policy.
*410 For the same reasons, we are unpersuaded by the rope cases, which have often been found outside the automobile use exclusion, such as Vogt v. Hotard, supra, Jones v. State Farm, supra, Young v. E & L Lumber, supra, and Patterson v. Stephenson’s Tree Serv. LLC, 47,702 (La.App. 2 Cir. 2/27/13), 110 So.3d 614, rev’d on other grounds, 2013-0684 (La. 5/24/13), 126 So.3d 1271. Tying down a load or pulling down a tree may not be integral to the use of an automobile; getting oneself in or out of the vehicle surely is.
Finally, we recognize the Marzells’ appeal to the purpose of insurance and the rule of broad construction in favor of coverage. However, their effort to recast ASIC’s policy as one for “malpractice” is not correct; the policy is for long-term care facilities and general liability. While there is overlap, it is not entirely a malpractice policy. The Marzells have made an eloquent case for malpractice, including negligent performance of loading or [ 9unloading a patient, La. R.S. 40:1299 A(3), and for Charlyn’s primary liability. This is not, however, the issue before us. The question is whether the conduct was excluded from the coverage of ASIC’s policy. The conduct fits the automobile use exclusion, and we are aware of no case holding the exclusion is contrary to statute or public policy. We therefore find that there is no genuine issue of material fact and that ASIC is entitled to judgment as a matter of law.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by Jacqueline R. Marzell and Monique P. Marzell.
AFFIRMED.

. ASIC also alleged that Ms. Marzell passed away in May 2015, but her daughters have not amended their petition to add a survival action.

. In fact, the only specific information was an incident report filed by Charlyn and Hanover as an attachment to their exception of prematurity. In this, Ms. Marzell’s attendant, Ms. Manuel, wrote, “the lifter flap had fell [sic] down.”