COX, J.
Appellant, Brenda Mills ("Brenda"), appeals a judgment from the First Judicial District Court, Parish of Caddo, State of Louisiana, wherein the trial court granted a motion for summary judgment in favor of Appellee, State Farm Mutual Automobile Insurance Company ("State Farm"). Brenda contends the trial court erred in dismissing her Uninsured/Underinsured Motorist ("UM") claims under three separate UM policies. She prays that the trial court's judgment be reversed. For the following reasons, we affirm.
FACTS
Randy and Brenda Mills are husband and wife; they have been married since *1248 1987. During their marriage, Randy bought a 2004 Kawasaki motorcycle. The motorcycle was registered solely in his name, he was the only one to drive the motorcycle, and was the only named insured. Randy did not reject UM coverage on the motorcycle.
Randy purchased UM coverage on the motorcycle through State Farm. State Farm issued the policy, which provided $50,000/$100,000 liability coverage, and $50,000/$100,000 UM coverage.
In addition to the motorcycle, both Randy and Brenda owned a 2004 GMC Envoy and a 2005 Chevy Pickup, each registered in both of their names. They purchased separate policies on each of the two vehicles from State Farm, which listed Randy and Brenda as named insureds. Each of the separate policies provided $50,000/$100,000 liability coverage, and $50,000/$100,000 UM coverage. Neither Randy nor Brenda rejected UM coverage under these policies.
On July 21, 2012, at approximately 9:00 a.m., Randy was driving the motorcycle with Brenda as a passenger. Randy lost control, admittedly through his own fault and negligence, went off the road, and entered a ditch. Brenda claimed she suffered serious injuries, including blurred vision, an open wound on her forehead that required stitches, a right hand injury, and several spinal injuries. She was hospitalized for three days. To date, she stated her medical bills exceed $42,545. Brenda also claimed lost wages, loss of employment benefits, loss of enjoyment of life, and emotional damages.
Brenda attempted to simultaneously recover liability and UM coverage under the State Farm policy covering the motorcycle, while also seeking to recover under the UM provisions of the two additional policies State Farm issued for their other vehicles. State Farm paid Brenda the $50,000 policy limit owed under the liability policy purchased by Randy on the motorcycle. However, Brenda claimed this amount was insufficient to cover her losses from the accident. State Farm declined to pay UM benefits to Brenda under any of the three separate UM policies issued by State Farm on the motorcycle, the Envoy, and the Chevy.
On March 22, 2016, State Farm filed a motion for summary judgment. After hearing the pleadings, evidence, briefs, and arguments of counsel, the trial court granted State Farm's motion, dismissing Brenda's claim for UM coverage. The trial court emphasized this was a one-vehicle accident and, therefore, UM coverage does not come into play. Brenda now appeals.
DISCUSSION
A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law, pursuant to La. C.C.P. art. 966. The burden of proof for a summary judgment motion remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(D)(1).
A de novo standard of review is required when an appellate court considers rulings on summary judgment motions, and the appellate court must use the same criteria *1249 that governed the trial court's determination of whether summary judgment was appropriate. Bank of New York Mellon v. Smith , 15-0530 (La. 10/14/15), 180 So.3d 1238, 1243.
An insurance policy is a contract between the two parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Mayo v. State Farm Mut. Auto Ins. Co. , 2003-1801 (La. 2/25/04), 869 So.2d 96. Interpretation involves ascertaining the common intent of the parties to the contract. La. C. C. art. 2045. Words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. La. C. C. art. 2047 ; Marshall v. Louisiana Farm Bureau Cas. Ins. Co. , 50,190 (La. App. 2 Cir. 11/18/15), 182 So.3d 214. "An insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion." Mayo, supra.
"The interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on motion for summary judgment." Marzell v. Charlyn Enters., LLC , 51,209 (La. App. 2 Cir. 2/15/17), 215 So.3d 405. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and impose and enforce reasonable conditions on policy obligations they contractually assume. Id. A court should grant the motion for summary judgment only when it is clear that the provisions of the insurance policy do not afford coverage. Id.
An insurer has the burden of proving that a loss comes within a policy exclusion. Ilgenfritz v. Canopius U.S. Ins. , 51,530 (La. App. 2 Cir. 8/9/17), 243 So.3d. 1109, 2017 WL 3400853. Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. C. C. art. 2056 ; Kottenbrook v. Shelter Mut. Ins. Co. , 46,312 (La. App. 2 Cir. 5/18/11), 69 So.3d 561, writ denied , 2011-1293 (La. 9/23/11), 69 So.3d 1166. Exclusionary clauses in an insurance policy are strictly construed. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each alternative interpretation must be reasonable. Mayo, supra. If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. Id. Whether the contract language is clear and unambiguous is a question of law. Ilgenfritz, supra.
The pertinent policy provisions at issue in this case are as follows:
Insuring Agreements
1. Under Uninsured Motor Vehicle Coverage, we will pay nonpunitive damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. The bodily injury must be:
a. Sustained by an insured; and
b. Caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle.
Uninsured Motor Vehicle does not include a land motor vehicle:
1. Whose ownership, maintenance, or use is provided Liability coverage by this policy;
2. Owned by, rented to, or furnished or available for the regular use of you or any resident relative[.]
Exclusions
THERE IS NO COVERAGE:
*1250 1. FOR AN INSURED WHO SUSTAINS BODILY INJURY WHILE OCCUPYING A MOTOR VEHICLE OWNED BY THE INSURED IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR.[1]
In her first argument, Brenda asserts that the UM Statute supports coverage. She argues that the statute allows the guest passenger of an at-fault vehicle to recover under the driver's UM coverage when there is UM coverage on the wreck-involved vehicle in which the guest passenger was injured and the driver's liability coverage is inadequate to cover the guest passenger's damages. However, the UM Statute is subject to exceptions included in the policy. Additionally, La. R.S. 22:1295(1)(e) states:
The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including the resulting death of an insured, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a policy that does not describe specific motor vehicles.
La. R.S. 22:1295(1)(e) essentially repeats State Farm's policy exclusion. The exclusion provision bars Brenda from receiving UM coverage because she has an ownership interest in the motorcycle. Randy purchased the 2004 Kawasaki motorcycle during his marriage to Brenda, which makes the motorcycle part of the community property regime, unless there is proof that it is separate property. There is no documentation to the contrary contained in the record, and this is not a genuine issue of material fact, as it is plainly stated in Brenda's brief. The UM Statute, therefore, does not support UM coverage.
Next, Brenda contends that the UM Insuring Agreement provides UM coverage. She claims that a "literal, common sense" interpretation of the agreement establishes that the State Farm policies provide UM coverage for her damages. While the "Insuring Agreement" provision purports to pay nonpunitive damages for bodily injuries sustained by an insured that were the result of an accident involving the use of an uninsured motor vehicle, Brenda fails to take into consideration the definition of an uninsured motor vehicle, as well as the exclusion provision.
State Farm's policy states that an uninsured motor vehicle does not include a vehicle whose policy provides liability coverage. The motorcycle does, and has already, provided liability coverage to Brenda in the amount of $50,000. Additionally, the definition of an uninsured motor vehicle does not include a vehicle owned by "you or any resident relative[.]" As a spouse, Brenda falls under the policy definition of resident relative and cannot receive UM coverage. The Insuring Agreement does not support UM coverage.
Brenda also argues that ambiguous terms must be construed against the insurer in favor of the insured. As there do not appear to be any ambiguous terms in the policy and Brenda does not specifically note any ambiguous terms in her brief, this argument is without merit.
Further, Brenda states that the State Farm policies indicate that an insured may recover under both the liability and UM coverage. Louisiana courts have *1251 continuously upheld language prohibiting insured claimants from recovering under both the liability and uninsured motorist provisions of the same policy. In Nelson v. Robinson , 44,059 (La. App. 2 Cir. 4/22/09), 10 So.3d 356, this Court explained that the "UM statute does not require that an injured guest be afforded coverage under both the liability and UM coverages of the host's policy where the negligence of the host caused the accident."
Brenda's recovery under the liability provision of the motorcycle policy issued to Randy precludes Brenda from collecting under the policy's UM provision. The motorcycle cannot act as both the insured and uninsured vehicle for a single policy. As such, the trial court was correct in denying Brenda's attempted recovery under the motorcycle policy's UM provision.
Brenda next asserts that the policies do not exclude coverage for her damages. She believes the exclusion prohibits UM coverage where the wrecked vehicle was owned by the insured, but not specifically insured by the policy. Thus, according to Brenda, the policy precludes UM recovery where the insured had not bought UM coverage on the wrecked vehicle, and she notes that the motorcycle is specifically listed as insured in the UM policy. This, however, is not what the exclusion provision sets forth. As the exclusion provision has previously been discussed, we will only briefly revisit this argument.
The policy defines "your car" as a vehicle listed on the Declarations Page of the policy. There is no coverage for bodily injury sustained by an insured while occupying a vehicle they own if it is not their car. Brenda has a community interest in the motorcycle, as it was acquired during the marriage, and the motorcycle is listed as the insured vehicle on the policy. Thus, the exclusion provision is applicable and does not provide UM coverage to Brenda under these facts.
Additionally, Brenda does not believe that the nonduplication provision precludes UM coverage. The provision states:
We will not pay under Uninsured Motor Vehicle Coverage or "Economic-Only" Uninsured Motor Vehicle Coverage any damages:
1. That have already been paid to or for the insured:
a. By or on behalf of any person or organization who is or may be held legally liable for the bodily injury to the insured; or
b. For the bodily injury under Liability Coverage of any policy issued by the State Farm Companies to you or any resident relative.
Specifically, Brenda contends that it was State Farm's intent to avoid double payment to a claimant, i.e. , prevent a claimant from recovering under both the liability coverage and UM coverage for the same damages. She states that her UM recovery, however, would not double the compensation for damages, but would rather be an attempt to recover 100% compensation.
The provision is clear that State Farm will not pay damages under UM Coverage that have already been paid to the insured for bodily injury under Liability Coverage of any policy issued to any resident relative. As defined by the policy, resident relative means "a person, other than you, who resides primarily with the first person shown as a named insured on the Declarations Page and who is related to that named insured or his or her spouse by blood, marriage, or adoption[.]" As Randy's spouse, State Farm was not required to pay Brenda damages under the UM provision because they had already paid her under the liability provision.
*1252 In her brief, Brenda heavily relies on Mayo, supra. In that case, the wife was injured in a two-car accident while riding as a guest passenger in a truck driven by her husband. Prior to their marriage, the husband had purchased the truck, and the wife had purchased a Geo Spectrum, which made both vehicles the separate property of each spouse. The wife had selected UM insurance, but the husband rejected it. The Louisiana Supreme Court emphasized that because the spouses acquired both vehicles prior to the establishment of the community property regime, neither spouse owned the other's vehicle, so the wife was injured while occupying a vehicle she did not own. The Court allowed the wife to recover UM benefits under her own State Farm policy.
The instant case is distinguishable from the facts in Mayo, supra , as it involves community property. Brenda is unable to recover UM benefits under the motorcycle, Envoy, or Pickup because she has an ownership interest in them. As such, this argument lacks merit.
Finally, Brenda contends she has a right to recover under other UM policies. La. R.S. 22:1295(1)(c) provides:
If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subparagraph (1)(a) of this Section, then such limits of liability shall not be increased because of multiple motor vehicles covered under such policy of insurance, and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; however, with respect to other insurance available, the policy of insurance or endorsement shall provide the following with respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, and the following priorities recovery under uninsured motorist coverage shall apply:
i. The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary.
ii. Should that primary insured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
"Generally, the UM coverage of the occupied vehicle is the applicable coverage, and Section [ (1)(c) ] establishes the general rule that the insured may not stack UM coverages even when the insured has UM coverage available to him under more than one policy." Rowe v. Williams , 41,082 (La. App. 2 Cir. 8/23/06), 938 So.2d 1185. The motorcycle was the occupied vehicle at the time of the accident. As previously stated, Brenda recovered under the liability provision of the motorcycle policy and was thus precluded from simultaneously recovering under the UM provision of that same policy. It is well settled that insureds may not stack UM coverage under more than one policy. Therefore, Brenda cannot recover under the UM provisions of the GMC Envoy or the Chevy Pickup.
CONCLUSION
State Farm's policy clearly does not support UM coverage in this case. Brenda was involved in a one-vehicle accident, caused solely by the negligence and fault of her husband, Randy. Brenda had an ownership interest in the motorcycle because it was *1253 purchased during her marriage to Randy and thus constitutes community property. State Farm paid Brenda $50,000 under the liability provision of the motorcycle policy. For these reasons, she is precluded from receiving UM coverage under the motorcycle, Envoy, or Pickup policies. As there is no genuine issue of material fact present, the trial court was correct in granting State Farm's motion for summary judgment. All costs of this proceeding are to be paid by Appellant, Brenda Mills.
AFFIRMED.

The policy defines the phrase "Your Car" as the "vehicle shown under 'YOUR CAR' on the Declarations Page." Under the motorcycle policy, the term "car" includes "a 2-wheel land motor vehicle with wheels in tandem designed for use primarily on public roads."