Judgment rendered August 28, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,773-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STANLEY WALLOGA                                    Plaintiff-Appellant

versus

DOUGLAS M. BONNER AND                              Defendants-Appellees
FREDA F. BONNER, ET. AL.

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 160,475

Honorable Allen Parker Self, Jr., Judge

* * * * *

ALL AMERICAN LAW FIRM OF LA, LLC          Counsel for Appellant,
By: Wade Thomas Visconte                   Stanley Walloga


DOUGLAS M. BONNER                          In Proper Person,
                                           Appellee


FREDA F. BONNER                            In Proper Person,
                                           Appellee


APRIL DICRISTOFALO                         In Proper Person,
                                           Appellee

PIPES, MILES, BECKMAN, LLC
By: Alexis P. Joachim

Counsel for Appellees, United Property & Casualty Insurance Company and Family Security Insurance Company

LAFLEUR & LABORDE, LLC
By: Benjamin M. Chapman

Counsel for Intervenor, Louisiana Insurance Guaranty Association

* * * * *

Before PITMAN, STONE, and THOMPSON, JJ.

**STONE, J.**

This appeal arises from the trial court's judgment granting motions for summary judgment in favor of United Property and Casualty Insurance Company and Family Security Insurance Company (hereinafter collectively "UPC"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On September 16, 2019, Stanley Walloga ("Mr. Walloga") filed a petition for damages against Mr. and Mrs. Douglas M. Bonner ("Bonners") and April Dicristofalo ("Ms. Dicristofalo") for bodily injuries he suffered as a result of a vicious pit bull attack. Therein, Mr. Walloga alleged that on April 11, 2019, he was jogging on Country Lane in Bossier Parish when Ms. Dicristofalo rode past him on a bicycle while holding the Bonners' dog by a leash. Without warning or provocation, the dog attacked him, causing him to suffer bite injuries to both arms, his left knee, and his left hip. As a result, Mr. Walloga had three surgeries to treat and repair his hip injuries. He also alleged that the Bonners' daughter, Ms. Dicristofalo, was incapable of maintaining control of the dog due to a mental disability.[1]

On October 2, 2020, Mr. Walloga filed a first supplemental and amending petition for damages against UPC as the alleged insurer of the Bonners and Ms. Dicristofalo (hereinafter collectively the "defendants"). On July 28, 2021, the defendants filed a third-party petition of defendants against UPC, alleging a duty to defend. On September 22, 2021, UPC filed answers to Mr. Walloga's petition for damages and first supplemental and amending petition for damages, as well as the defendants' third-party

---

[1] No criminal charges were brought against Ms. Dicristofalo.

petition, wherein it alleged several defenses, including the lack of insurance coverage.

It is undisputed that UPC issued a homeowner's policy ("the policy") to the Bonners for the period of time in which the event giving rise to this lawsuit occurred.[2]  The policy includes the following exclusionary language:

> The following Exclusions are added to **E. Coverage E – Personal Liability and Coverage F – Medical Payments To Others:**
> **9. Animals**
> "Bodily injury" or "property damage" caused by, resulting from, or arising out of the conduct of any animal whether or not the "bodily injury" or "property damage" occurs on the "residence premises" or elsewhere.

Thus, on August 15, 2022, UPC filed two motions for summary judgment against Mr. Walloga and the defendants based on lack of insurance coverage.  However, on September 6, 2022, Mr. Walloga filed a motion for summary judgment against UPC regarding the issue of insurance coverage.  Additionally, on November 7, 2022, the defendants filed an opposition to the motions for summary judgment filed by UPC.  On January 23, 2023, the trial court granted both of UPC's motions for summary judgment and denied the motions filed on behalf of Mr. Walloga and the defendants.  The trial court granted UPC's motions for summary judgment based on the following reasons:

> Accordingly, the Court finds that there is no genuine issue of material fact as it relates to this instance being excluded from coverage under the homeowners' policy issued by UPC.  As such, the Court finds that UPC had no duty to defend the defendant Bonners.  Additionally, the Court finds that the motions filed on behalf of the plaintiff and the Bonners are without merit and will be DENIED.

---

[2] The Bonners purchased their home in 2017 and also purchased a homeowner's policy from UPC (policy number ULF 000120700), which was underwritten by Family Security Insurance Company.  The policy was renewed from October 6, 2018-2019, and was in effect during the date of the dog attack.

On February 22, 2023, Mr. Walloga filed a motion and order for devolutive appeal.[3] Shortly thereafter, UPC was declared insolvent, and the trial court ordered a stay of proceedings pending further orders from Florida's Second Judicial Circuit Court. On October 10, 2023, the Louisiana Insurance Guaranty Association ("LIGA") filed an ex parte motion for leave to intervene because this case may involve a covered claim pursuant to La. R.S. 22:2055(6) and La. R.S. 20:2058(A).[4] On October 13, 2023, the trial court lifted the stay of proceedings.

Mr. Walloga filed the instant appeal, alleging that (1) the animal liability exclusion violates La. R.S. 22:1320, (2) the animal liability exclusion is vague and ambiguous as it relates to the term "conduct," and (3) UPC did not comply with the Louisiana Department of Insurance's ("LDI") requirement that an endorsement waiving animal liability coverage be signed by an insured.

## DISCUSSION

Appellate courts review the granting or denial of a motion for summary judgment *de novo* under the same criteria governing the trial court's determination of whether summary judgment is appropriate. *Schultz v. Guoth*, 10-0343 (La. 1/19/11), 57 So. 3d 1002, *reh'g denied*, 10-0343 (La. 3/4/11), 2011 La. LEXIS 1279. A court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to

---

[3] The defendants also filed a motion and order for devolutive appeal on March 9, 2023.

[4] LIGA is permitted to avail itself of the same policy defenses that would be available to UPC, had UPC not become insolvent.

3

judgment as a matter of law, pursuant to La. C.C.P. art. 966(A)(3).

*Diamond McCattle Co., L.L.C. v. Range Louisiana Oper., LLC*, 53,896 (La. App. 2 Cir. 4/14/21), 316 So. 3d 603, *writ denied*, 21-00681 (La. 9/27/21), 324 So. 3d 92.

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Green v. Brookshire Grocery Co.*, 53,066 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1256. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Green v. Brookshire Grocery Co.*, *supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Green v. Brookshire Grocery Co.*, *supra*.

### Applicability of La. R.S. 22:1320

In his first assignment of error, Mr. Walloga argues that the animal liability exclusion is invalid because "the public policy mandate of La. R.S. 22:1320 prohibits an insurer from denying insurance coverage in cases of a person's 'criminal conduct' involving 'the criminally negligent ownership or handling of a dog or other animal.'" La. R.S. 22:1320 provides:

> Notwithstanding anything to the contrary, liability coverage, which would otherwise be valid under the terms of the policy, shall not be declared void under any contract provision which specifically denies coverage for any and all acts committed due to criminal conduct, where such criminal conduct is due to the criminally negligent ownership or handling of a dog or other animal pursuant to R.S. 14:32(A)(2) or R.S. 14:39(A)(2).

Mr. Walloga asserts that this statute "only requires criminal conduct and does not require a criminal conviction because of criminal conduct."[5] Mr. Walloga contends that Ms. Dicristofalo failed to properly restrain the dog in violation of La. R.S. 14:102.14. He further asserts that this amounts to "criminal conduct," and therefore, the animal liability exclusion is void as mandated by La. R.S. 22:1320. We disagree.

We find that La. R.S. 22:1320 is not applicable to the case as it applies only to standard fire policies. Because the policy at issue is *not* a standard fire policy, it cannot be governed by La. R.S. 22:1320. Therefore, this assignment of error lacks merit and is rejected. We do not address whether an actual conviction is required to trigger application of La. R.S. 22:1320.

### *Ambiguous Contract Language*

Secondly, Mr. Walloga argues that the policy is vague and ambiguous. Specifically, Mr. Walloga asserts that the animal liability exclusion fails to address coverage resulting from or arising out of the conduct of any *insured.* Thus, the policy is ambiguous because "it does not contain an exception creating coverage for the separate and independent negligent conduct of the dog *owner*." Furthermore, Mr. Walloga claims that the term "conduct" refers to the actions of people and *not* animals. On the other hand, if the conduct in the exclusion applies to both people and

---

[5] In support of this argument, Mr. Walloga cites *Ogea v. Merritt*, 13-1085 (La. 12/10/13), 130 So. 3d 888. *Ogea* addressed the potential liability of a member of a limited liability company ("LLC") to a third party for the member's own wrongful conduct. In that context, the Louisiana Supreme Court stated that "there is no reason to require that the member be actually convicted of…[a] crime to establish the factor of criminal conduct as a negligent or wrongful act" sufficient to establish tort liability. Because *Ogea* involved an entirely different issue with no significant parallels to the issue we address here, *Ogea* is irrelevant.

5

animals, then the exclusion is so vague and ambiguous that the policy would be unenforceable pursuant to La. R.S. 22:1320.

An insurance policy is a contract between the two parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Mayo v. State Farm Mut. Auto Ins. Co.*, 03-1801 (La. 2/25/04), 869 So. 2d 96. Interpretation involves ascertaining the common intent of the parties to the contract. La. C.C. art. 2045. Words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; *Marshall v. Louisiana Farm Bureau Cas. Ins. Co.*, 50,190 (La. App. 2 Cir. 11/18/15), 182 So. 3d 214. "An insurance contract should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms to achieve an absurd conclusion." *Mayo, supra*.

"The interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on motion for summary judgment." *Marzell v. Charlyn Enters., LLC*, 51,209 (La. App. 2 Cir. 2/15/17), 215 So. 3d 405. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and impose and enforce reasonable conditions on policy obligations they contractually assume. *Id.* A court should grant the motion for summary judgment only when it is clear that the provisions of the insurance policy do not afford coverage. *Id.*

The policy and exclusion in question provided, in pertinent part:

6

The following Exclusions are added to **E. Coverage E – Personal Liability and Coverage F – Medical Payments To Others:**

**9. Animals**

"Bodily injury" or "property damage" caused by, resulting from, or arising out of the conduct of any animal whether or not the "bodily injury" or "property damage" occurs on the "residence premises" or elsewhere.

We find that the policy's animal liability exclusion is clear and unambiguous in its denial of coverage. In this case, Mr. Walloga was jogging on Country Lane in Bossier Parish when Ms. Dicristofalo rode past him on a bicycle. Immediately thereafter, the dog attacked him, causing him to suffer bite injuries to both arms, his left knee, and his left hip. He is now seeking damages for his injuries as a result of the accident. The exclusion clearly applies, as the policy specifically excludes coverage of any incident where bodily injury is caused by the conduct of any animal, whether it occurs at the homeowner's residence or elsewhere.

We note Mr. Walloga's assertion that the policy is ambiguous because it does not *expressly* contain an exclusion denying coverage for a dog owner's separate and independent negligent conduct and his claim that the term "conduct" does not apply to animals. However, we find this interpretation to be unreasonable and not supported by the plain language of the policy. Therefore, this assignment of error lacks merit.

*Signed Endorsement*

In his final assignment of error, Mr. Walloga argues that the animal liability exclusion is invalid because the Bonners did not sign an endorsement acknowledging that they knowingly waived said coverage. He points out that the LDI has the authority to regulate the content and form of insurance policies issued in Louisiana. Furthermore, to assist and facilitate

7

insurance companies' compliance with Louisiana law, the LDI published a Policy Form Filing Handbook. The handbook refers to a "Product Filing Matrix" ("matrix") that includes all legal requirements applicable to the content of policies. The matrix addresses the issue of exclusions regarding injuries caused by animals as follows:

> **Section: Exclusions**
> **Reference – La. C.C. art. 2321\***
> **Damage Caused by Animals: Louisiana Civil Code Article 2321**
>
> states, in part, "the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog." *Since an insured would reasonably expect coverage for such an event, it would be against public policy to exclude such coverage without proper notice to the insured. The department will allow such an exclusion only by endorsement with signoff by the insured.* (emphasis added).

Thus, Mr. Walloga asserts that UPC did not comply with the LDI's requirement that an insured sign an endorsement waiving animal liability coverage. We disagree.

As outlined in *Reaux v. Moresi*, 13-510 (La. App. 3 Cir. 8/28/13), 120 So. 3d 959, "an agreement modifying the coverage of an insurance contract is only valid if 'it is in writing and physically made a part of the policy.' Any exclusion 'shall be deemed to be physically made a part of a policy . . . within the meaning of [the] Section, whenever such written agreement makes reference to such policy . . . and is sent to the holder of such policy.' La. R.S. 22:867(C). According to the statute, therefore, as long as the exclusion makes reference to the policy, is in writing, and is in the possession of the insured, it is physically made a part of the policy." In this case, the animal liability exclusion was written and refers to the Bonners'

8

policy. The exclusion was also listed under "Special Provisions – Louisiana." Thus, the exclusion is valid.

Mr. Walloga urges us to find that based on the matrix, public policy dictates that the animal liability exclusion should not apply. The court in *Breazeale v. T.T.*, 12-1703 (La. App. 1 Cir. 4/26/13), 117 So. 3d 192, *writ denied*, 13-1852 (La. 11/1/13), 125 So. 3d 437, held that "we are not bound by the opinion of the Commissioner of Insurance with respect to whether a policy provision violates public policy. *P.D. v. S.W.L.*, 07-2534 (La. App. 1 Cir. 7/21/08), 993 So.2 d 240, *writ denied*, 08-2770 (La. 2/13/09), 999 So. 2d 1146. It is the job of the courts to resolve disputes over insurance coverage. *See Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00), 774 So. 2d 119. *See also* La. Const, art. V, § 1. The opinion of the Commissioner of Insurance is persuasive, but not binding. *Reinhardt v. Barger*, 07-2363 (La. App. 1 Cir. 04/29/09),15 So. 3d 122, *writ denied,* 09-1786 (La. 11/20/09), 25 So. 3d 811. We cannot allow the Commissioner to usurp either the legislative or judicial role, by issuing a directive that constitutes an unauthorized exercise of legislative and/or judicial power. *Id*." This court agrees with the rationale used by the First Circuit in *Breazeale*, *supra*. Therefore, this assignment of error lacks merit.

Accordingly, we find that UPC satisfied its burden of proof, and there is no genuine issue of material fact. UPC is entitled to summary judgment as a matter of law.

**CONCLUSION**

For the reasons stated above, we affirm the January 23, 2023, judgment of the trial court, granting summary judgment in favor of United

9

Property and Casualty Insurance Company and Family Security Insurance

Company.  All costs of this appeal are assessed against the appellant,

Stanley Walloga.

**AFFIRMED.**