Judgment rendered January 27, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,477-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MODESTA GONZALES                              Respondent

versus

RICARDO MINION AND                            Applicant
TRUCORE ENERGY, LLC

* * * * *

On Application for Writs from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 154788

Honorable R. Lane Pittard, Judge

* * * * *

RABALAIS & HEBERT, LLC                         Counsel for Appellant
By: Steven Bernard Rabalais                     First Guard Insurance
                                                Company


JOSEPH ANDREA GREGORIO                          Counsel for Appellee,
                                                Modesta Gonzalez


THOMPSON, COE, COUSINS                          Counsel for Defendant
& IRONS                                         TruCore Energy, LLC
By: Matthew R. Feigler
    Doris Ann Louise Royce

COURINGTON, KEIFER, SOMMERS,
MARULLA & MATHERNE, LLC
By: Steven M. Lozes

Counsel for Defendant
Ricardo Minion

GIEGER LABORDE & LAPEROUSE, LLC
By: Robert Irwin Siegel
    Jody Clark McMillan

Counsel for Defendant
Everest National
Insurance Company

\* \* \* \* \*

Before PITMAN, STONE, and THOMPSON, JJ.

STONE, J., dissents with written reasons.

**THOMPSON, J.**

This matter arises from the denial by the district court of a motion for summary judgment sought by an insurance company defendant seeking dismissal alleging exclusion of liability insurance under its policy. The district court denied the motion for summary judgement, citing genuine issues of material fact which it asserted precluded granting of the motion. For the following reasons, we affirm the ruling of the district court.

## FACTS & PROCEDURAL HISTORY

On October 13, 2017, Modesta Gonzales ("Gonzales") was driving her Ford Fusion when she was rear-ended by Ricardo Minion ("Minion") who was driving an 18-wheeler he owned while towing a trailer owned by TruCore Energy, LLC ("TruCore"). As a result of this accident, Gonzales allegedly sustained injuries, and this suit arose. Minion was working as an independent contractor hauling sand used in fracking operations for TruCore. Minion held an insurance policy through First Guard Insurance Company ("First Guard"), which covered "nontrucking" activities. The term "nontrucking" is specifically defined in the insurance policy to apply only to situations in which a leased vehicle is being "operated solely for personal use and unrelated to any business activity." Additionally, Everest National Insurance Company ("Everest") provided trucking/business auto coverage for TruCore. The use of Minion's vehicle at the time of the accident would be determinative of which insurance policy would provide coverage at the time. Both carriers assert their policies do not afford coverage. Minion asserts he should be insured at the time of the accident by at least one, if not both, of the insurance policies in place for his truck and the trailer.

On the day of the accident, Minion used the tractor-trailer to deliver sand to a well site in Coushatta and was returning to Bossier City with TruCore's trailer still attached. Minion rear-ended Gonzales. After the accident, Minion provided at least three competing factual scenarios regarding what he was doing or was on his way to do at the time of the accident. These three inconsistent statements are at the core of the district court's denial of the motion for summary judgment filed by First Guard. The irreconcilable statements by Minion regarding his activities leading up to the accident were as follows:

1. When speaking with a First Guard representative, Minion stated that he was "headed home" at the time of the accident;

2. In that same conversation with the First Guard representative, Minion stated he was driving to the Cash Magic truck stop to park and secure the tractor-trailer, get into his personal vehicle, and travel to his home in Shreveport; and

3. In his deposition, Minion stated that he was traveling to the Petro truck stop to "stage-up" the tractor-trailer for his next assignment from TruCore.

During the course of litigation, a motion for summary judgment was filed by First Guard. In their motion, they allege that as Minion was in the process of hauling or preparing to haul, there would be coverage afforded under its policy providing nontrucking activities as defined in its policy. First Guard asserted there are no issues of material fact and that its non-trucking policy does not apply to the facts in this case and that it should be dismissed.

In addition to the MSJ filed by First Guard, Gonzales filed her own motion for partial summary judgment. In her motion, she alleged that there are no genuine issues of material fact with regard to the following:

- TruCore is vicariously liable for the actions of Minion;

- Her petition states a cause of action;

- There was no third party at fault in the cause of the accident;

- Her damages were not the result of any superseding or intervening cause;

- Her damages were caused by the accident;

- She mitigated her damages;

- Everest insures both Minion and TruCore Energy; and

- First Guard insures both Minion and TruCore Energy.

Additionally, Everest filed its own MSJ alleging that there are no genuine issues of material fact, that Minion was not insured under its policy because Minion owned his truck independently, and that he was operating it for personal use at the time of the accident and not for the purpose of conducting business for TruCore. Additionally, Everest asserted that it is undisputed that Minion was an independent contractor and not an employee of TruCore.

The district court took up arguments on all MSJs at one hearing and ultimately denied all, reasoning that summary judgment was not proper because the "facts are all over the place" relative to what activities Minion was engaged in immediately prior to and at the time of the accident, which would be determinative of insurance coverage. This appeal, which originated as a writ, followed and was sought only by First Guard, in which it asserted two assignments of error, which are addressed below.

**STANDARD OF REVIEW**

De novo review is required when an appellate court considers rulings on motions for summary judgment. *Bank of New York Mellon v. Smith*, 15-0530 (La. 10/14/15), 180 So. 3d 1238, 1243. The appellate court must use

3

the same criteria that governed the district court's determination of whether summary judgment was appropriate: (1) whether there exists a genuine issue of material fact and (2) whether or not the mover is entitled to judgment as a matter of law. *Clinton v. Reigel By-Products, Inc.*, 42,497 (La. App. 2 Cir. 09/19/07), 965 So. 2d 1006, 1008, *writ not cons.*, 07-2239 (La. 02/15/08), 976 So. 2d 168.

## DISCUSSION

**<u>Assignment of Error No. 1:</u> The trial court erred in concluding that factual questions in the case rose to the level of genuine issues of material fact sufficient to preclude summary judgment in favor of First Guard Insurance Company.**

By its first assignment of error, First Guard alleges that the district court erred in concluding that genuine issues of material fact exist such that summary judgment is precluded. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof on a summary judgment motion remains with the mover. However, if the mover will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La. C.C.P. art. 966(D)(1); *J & L Oil Co. v. KM Oil Co., LLC*, 51,898 (La. App. 2 Cir. 2/28/18), 247 So. 3d 147.

4

Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Hudson v. Jager Bomb LLC.*, 47,501 (La. App. 2 Cir. 11/14/12), 107 So. 3d 712. In this case, which insurance company's coverage applies rests on the <u>material fact</u> of whether Minion's activites would be defined as "trucking" or "nontrucking" at the time of the accident. As noted above, Minion provided at least three different versions of what he was doing at the time of the accident. Two could be determined to be nontrucking activities and one could be determined to be trucking. A determination of the genuine issue of material fact is required to assess liability and dismiss an insurer from this matter.

Summary judgment is only appropriate if there is no factual dispute as to whether Minion was working in a nontrucking or trucking capacity at the time of the accident. In this case, both insurance companies allege that neither of their policies apply to the facts presented here. Minion, however, makes a compelling argument that he has to be covered by at least one, if not both, of the insurance policies. First Guard asserts that its nontrucking policy does not apply because Minion was conducting business for TruCore at the time of the accident. Everest asserts that its policy does not apply because Minion <u>was not</u> employed by TruCore and he was operating his truck for personal use.

As addressed at oral arguments on appeal, there are at least three competing factual scenarios as to what Minion was actually doing at the time of the accident and where he was going and why. The response to this

5

Court's inquiry as to whether insurance coverage vacillates between the policies or could exist under only one at a time, or possibly both, convinced us that the district court was correct in concluding that there exist genuine issues of material fact. A determination of the issue of coverage would be improper at this juncture under the competing theories of coverage or, at least, the lack thereof.

In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 17-01251 (La. 10/27/17), 228 So. 3d 1230. It is not the duty of the district court to determine which factual scenario is the one that occurred or to evaluate the credibility of Minion on summary judgment, because to do so would be to recognize there exists a genuine issue of material fact based on which version of Minion's statement the court applied. Material facts remain in dispute, and as such summary judgment would be improper. Likewise, it is not the duty of this Court to determine which factual scenario it believes to be the one that occurred. That duty belongs to the district court upon further exploration at trial.

Under these contradictory and mutually exclusive various factual scenarios, summary judgment would have been improper, and the district court correctly denied summary judgment. This assignment of error is without merit.

**Assignment of Error No. 2: The trial court erred in not applying the clear and unambiguous provisions of the policies issued by First Guard Insurance Company, so as to grant summary judgment in favor of First Guard on all claims asserted against it.**

By its second assignment of error, First Guard asserts that the district court erred in not applying the unambiguous provisions of the policies issued by it. However, as stated above, summary judgment denying coverage may only be granted if there exists no genuine issue of material fact. *Hudson, supra*. Minion's conflicting statements of his activities immediately before and at the time of the accident give rise to genuine issues of material fact regarding which insurance policy, and possibly both, would be in effect at the time of the accident. The district court, in reviewing the pleadings and supporting exhibits, concluded "the facts are all over the place" and that it could not disregard the genuine issues of material fact in dispute. Therefore, because there exist genuine issues of material fact, the district court did not err in not applying the policy provisions provided by First Guard. This assignment of error is without merit.

## CONCLUSION

Considering the foregoing, the judgment of the district court denying summary judgment is affirmed. Costs of this appeal are assessed to appellant.

**AFFIRMED.**

7

**Stone, J., dissenting.**

The majority opinion is silent regarding the most important issue in this case: whether First Guard's non-trucking policy would provide coverage under any of the 3 factual scenarios supposedly reflected in Minion's statements. As demonstrated herein, coverage under First Guard's non-trucking policy is clearly inapplicable in all 3 competing scenarios; that is because Minion was not "non-trucking" within the meaning of the First Guard policy in any of the 3 scenarios. Therefore, the issue of which scenario a factfinder would adopt at trial is immaterial. The majority's refusal to even acknowledge this issue, despite it being sufficiently raised in First Guard's appellate brief, appears to be based on the fact that doing so can only lead to dismissal of First Guard from the case, *i.e.,* the outcome opposite the one desired by the majority.

The party asserting that an insurance policy provides coverage bears the burden of proving that the matter sued upon falls within the policy's terms of coverage. *Byrd v. Linton*, 48,191 (La. App. 2 Cir. 6/26/13), 117 So. 3d 1268. However, the insurer bears the burden of proving the applicability of policy limits or exclusionary clauses, which are strictly construed. *Mills v. Mills*, 51,509 (La. App. 2 Cir. 1/10/18), 243 So.3d 1245; *Byrd, supra.*

**Application of the First Guard policy language to each scenario**

The First Guard policy states that it "does not afford full-time protection. It only applies while a covered truck is non-trucking, as defined in the policy." More particularly, First Guard's argument is based on the following language of the First Guard policy:

PART II - WHEN AND WHERE THIS POLICY APPLIES

1.) When this policy applies:

1

This policy does not afford full-time protection. This policy only applies to accidents involving a covered truck that occur within the policy period shown in the declarations **when that covered truck is non-trucking.** (Emphasis added).

First Guard also cites the following provisions in the Policy Definitions, found at Page 1 of the First Guard policy; together, these definitions delineate the circumstances under which a truck is "non-trucking":

I. Non-trucking means when a truck is:

  1. subject to an active permanent lease with a motor carrier; and is

  2. either bobtail or deadhead; and is

  3. operating solely for personal use *and unrelated to any business activity*

  Non-trucking does *not* include a truck that:

a.) Is being operated for an economic or business purpose, which includes trips to or from service or maintenance facilities when service or maintenance is an expressed or implied requirement of a permanent lease.

b.) Is being operated under the expressed or implied management, control, or dispatch (as defined by DOT regulations and case law precedents) of a motor carrier.

c.) Is in a layover.

d.) Is returning to the truck's primary garage location subsequent to delivering a load.

L. Primary Garage Location means the home parking base for a truck.

Additionally, the policy states that "[d]eadhead means a truck with only an empty trailer attached." Layover is defined as follows:

2

> Layover means any interlude, or detour from route, that takes place away from a covered truck's primary garage location between or during load hauling assignments.

As shown above, the First Guard policy limits "non-trucking" to activities which are "solely for personal use *and unrelated to any business*." (Emphasis added). It also specifies that "non-trucking" does not include when a truck is in layover or is returning to its Primary Garage Location.

The respective scenarios are numbered as follows for reference: (1) Minion was in route to a Petro station where he would await his next assignment from Trucore; (2) Minion was in route to the Cash Magic casino/truck stop, the truck's primary garage location, where he would leave the truck and get in his personal vehicle to go home; and (3) Minion was taking the truck directly to his house.

All three scenarios fail the requirement for coverage that the accident occur while the truck is "operating solely for personal use and *unrelated to any business*." It is undisputed that, at the time of the accident, Minion was on a return trip from making a delivery on behalf of Trucore; he was finished making the haul, and had not reached wherever he was going next, and he had not made any detours or stops. Thus, as a matter of logic, Minion's return trip (during which he had the wreck with the plaintiff) was necessitated by his delivery on behalf of Trucore. The return trip has such nexus with the business use of the truck that it cannot be deemed "unrelated to business" activity.

Additionally, scenarios (1) and (3)*, supra,* both fall within the definition of a layover in the previously-quoted First Guard policy provisions, and therefore, no coverage would extend (even if the return trip somehow was deemed "unrelated to business"). The operative language in

3

the definition of layover would be "any interlude…that takes place away from the truck's primary garage location, between or during load hauling assignments." Minion testified that his next load hauling assignment after the Friday, October 13, 2017, collision was on Monday, October 16, 2017. This two-day interim (between the Friday collision and Minion's next load hauling assignment on the following Monday) is small enough to consider Minion to have been "between…load hauling assignments" for the intervening weekend.

Finally, Scenario (2) – returning the truck to Cash Magic and taking the personal vehicle home –would constitute "returning to the truck's primary garage location," and therefore, coverage would not apply (even if the return trip somehow was deemed "unrelated to business"). Minion testified that he primarily stored the truck at Cash Magic casino, and there is no conflicting summary judgment evidence on that point.

For these reasons, Everest has failed to point out a genuine issue of *material* fact, and First Guard is entitled to judgment as a matter of law. I respectfully dissent.